WABASH VALLEY COACH COMPANY ET AL. *v.* TURNER.

[No. 27,718. Filed January 14, 1943. Rehearing denied February 8, 1943.]

54

*Adamson, Blair & Adamson, Thomas P. Gallagher,* and *Thomas F. O'Mara,* all of Terre Haute, for appellants.

*Bert F. Wood, Ralph E. Brill, Winfield M. Fox,* and *Frank Hamilton,* all of Terre Haute, for appellee.

FANSLER, J.—The appellee, a stockholder in the appellant corporation, began this action by a complaint in which the appellant corporation and the appellants Sale were made defendants, the latter both as individuals and as officers of the corporation.

The complaint alleges that the corporation owned and operated a motor bus line for the transportation of

passengers and freight; that the total number of authorized shares of capital stock is 500 shares of the par value of $100 each; that on the 15th day of September, 1929, there was a total of 149 shares of the stock of the corporation outstanding, of which the plaintiff owned 100 shares, the defendant, Burwell W. Sale, 22 shares, the defendant, Gertrude B. Sale, 15 shares, one Wayne Larison, 5 shares, and one Sam Boyer, 7 shares; that Burwell W. Sale and the plaintiff were then directors of the corporation; that Burwell W. Sale is an experienced and astute business man; that for five years prior to September 15, 1929, he had the exclusive management, control, and direction of the books and financial records of the corporation, and had managed and controlled its financial and business affairs and policies, and that the other directors and officers were guided by, and relied implicitly upon, his advice and superior business judgment and ability. The corporation at that time owned and operated a bus line between the cities of Terre Haute and Vincennes. A short time prior to September 15, 1929, Burwell W. Sale proposed that the corporation purchase a bus line then operating between Vincennes and Evansville for the purpose of benefiting the corporation and the public in the operation of a through bus line from Terre Haute to Evansville. It is alleged that the plaintiff then stated to Burwell W. Sale that the corporation had insufficient funds available for the purpose, which plaintiff believed would entail an investment of approximately $60,000; that Sale "thereupon falsely and fraudulently, and with the intent and purpose to cheat and defraud plaintiff and the other stockholders in said corporation," represented that if the corporation would give him 100 shares of the capital stock he would personally finance the purchase of the franchise and equipment for the corpora-

tion; that, relying upon such representation, and believing that the acquisition of the new property would increase the value of the corporation "both pecuniarily to its members and stockholders, and as a public utility," the directors of the corporation voted to declare a stock dividend amounting to 108.77 shares (73 per cent.) out of the unissued capital stock of the corporation, to be distributed among its common stockholders as follows: The plaintiff, 73 shares; Samuel G. Boyer, 5.11 shares; Wayne Larison, 3.65 shares; and Burwell W. Sale, 27.01 shares. The certificates for this stock were not issued or delivered to Turner, Boyer, or Larison, but each executed and delivered to Sale a written assignment transferring their respective shares in the stock dividend to him; that Sale afterward caused all of the dividend stock to be issued in his name, and immediately thereafter caused the 108.77 shares of stock dividend to be transferred to his wife, Gertrude B. Sale, who paid no cash or other valuable consideration therefor; that Burwell W. Sale gave no consideration to the other stockholders for the transfer of the stock in question, except his agreement to finance the purchase of the new coach line. It is alleged that Sale did not personally finance or pay the purchase price for the new bus line, and that he failed and refused to do so, and that at the time of the promise he had no intention so to do. It is further alleged that at the time of the issuing of the stock dividend the corporation did not have "any net earnings or a surplus account, funds or money with, and out of which to declare, distribute and divide among its common stockholders, a cash dividend or a stock dividend without impairing the value of the capital stock of said corporation." It is alleged that afterward the Public Service Commission of Indiana authorized the issue and sale of 220 shares of the capital stock

of the corporation, for cash, at par, for the purpose of reimbursing the treasury of the corporation for money expended in the purchase of equipment. But it is not alleged that this latter stock was ever issued, although it is alleged that the 108.77 shares issued as a stock dividend was and is the identical stock thereafter authorized to be issued by the Public Service Commission. There are allegations that Sale and his wife, who thereafter became an officer of the corporation, formed a fraudulent plan and scheme to mismanage and misappropriate the money and assets of the corporation, and that they did misappropriate certain funds, but these contentions seem to have been abandoned. It is then alleged that the stock issued as a stock dividend is void for eleven separate reasons, all of which seem to have been abandoned in the briefs and argument here, except that the issue was in violation of two specific statutes to which attention will be directed. It is alleged that: "Plaintiff has no other adequate legal remedy to protect and secure his rights in said premises as fully as an injunction and restraining order will do herein"; and "that Plaintiff sues in his own right as a stockholder, and on and in behalf of said Wabash Valley Coach Co., and all other stockholders therein, except said Defendants, Sales, aforesaid." There was prayer for a restraining order and injunction to enjoin the issuing of shares of stock of the corporation for money or property less than the par value of the shares, or for the payment of any debt, and to enjoin the voting or transferring of the 108.77 shares of stock issued as above described, and that those shares of stock be declared null and void; that the defendants Sale be required to account for and pay into the treasury of the corporation any sums wrongfully appropriated by them. There was a restraining order without notice, and, upon

hearing, a temporary injunction, trial by the court, special findings of facts and conclusions of law, and a judgment by which the temporary injunction was made permanent, and it was decreed that the defendant, Gertrude B. Sale, surrender the stock certificate in question for cancellation, and that the corporation cancel or cause the stock certificate to be canceled upon its records, and for costs. The temporary injunction was made permanent by the final judgment. After the close of the evidence the plaintiff asked leave to amend his complaint by striking from the prayer so much thereof as asked for an order requiring an accounting by the defendants Sale for any monies wrongfully appropriated by them from the funds and assets of the corporation, and the amendment was permitted.

The court found the uncontroverted facts as to the organization of the corporation, its purposes, and the amount of stock outstanding before and after September 15, 1929; the resolution of the directors declaring the stock dividend and that the plaintiff voted in favor thereof; that on that date the corporation carried on its books a surplus and undivided profits account in the sum of $559.59; that on or as of the 15th day of September, 1929, but subsequent to the meeting of the board of directors and the declaration of the stock dividend, entries were made on the books of the corporation as follows:

"Organization expense debit,_____$10,800.00
"Undivided profits, credit,_____ 10,800.00
"to set up surplus account for the purpose of
"stock dividend issue authorized by board of
"directors this date";

that said entries were not supported by a resolution of the board of directors; that on that date the corporation held in its depreciation fund the sum of $11,444.75.

It was further found that on this same date negotiations were pending with a view to purchasing the motor bus line to Evansville, and that subsequently the line was purchased for $10,000 in cash. It is then found that at about the time of the purchase the corporation borrowed from a bank the sum of $8,000; that the bank required as a condition to the loan that Burwell W. Sale personally guarantee payment thereof; that the corporation executed its note in favor of the bank, and Sale personally indorsed the note. There is a finding that the plaintiff and the other stockholders transferred their rights in the stock dividend to Burwell W. Sale, and that the certificate for the stock was issued in his name on the same date, and that two days later the certificate was assigned to Mrs. Sale and a new certificate issued to her; that: "The defendant, Wabash Valley Coach Company, received no consideration of any kind from the defendant, Burwell W. Sale, the defendant, Gertrude B. Sale, or any other person for the 108.77 shares of its capital stock originally represented by stock certificate No. 15 issued in the name of the defendant Burwell W. Sale." The court concluded that the law was with the plaintiff; that the action of the directors in issuing the stock dividend "was illegal, invalid, null and void"; that the stock should be surrendered for cancellation, and that the temporary injunction should be made permanent.

There is no finding of fraud. There is no finding that the defendant Sale agreed to finance the purchase of the new property out of his own funds. There is a finding that the corporation received no consideration from the defendants Sale for the issue of the stock representing the stock dividend. But no consideration is contemplated in the case of stock dividends, and this stock was not received by the defendants

Sale from the corporation except the few shares of dividend stock which they personally received. The remainder was received by them through an assignment of the rights of other stockholders, and there is no finding that the other stockholders, or the corporation, received no consideration or benefit for the assignment of these dividend shares to Sale. There is no finding that the corporation had no earnings or assets against which these dividend shares might be issued. The finding in this respect is limited to the fact that the company carried on its books on the date of the issue a surplus and undivided profits account in the sum of $559.59. There is a further finding that subsequently certain entries were made upon the books for the purpose of setting up a surplus and undivided profits account for the purpose of the stock dividend, and that "said entries are not supported by resolution of the Board of Directors of said corporation or otherwise." But we know of no rule that bookkeeping entries require a resolution of the board of directors or other support except in the basic facts which they represent, and there is no finding that the entries were not justified by the facts and the financial situation of the company. Failure to find material facts is a finding against the party, in this case the plaintiff, who had the burden of proving those facts. The court did find that the company bought the new property referred to in the complaint for $10,000, and that the purchase was approved by the Public Service Commission; that it borrowed $8,000 from a bank; that the bank required as a condition to the loan that Burwell W. Sale personally guarantee payment thereof, and that Sale indorsed the note, and that the loan was made to the company. Thus the use of the credit of Burwell W. Sale was a benefit to the company and to the other stock-

holders, as the complaint alleges and concedes. The complaint alleges and concedes that there was a consideration for the transfer of the dividend stock by the other stockholders to Sale. It alleges that the consideration was the financing of the purchase of the new property, which the plaintiff believed would cost $60,000. It is alleged in the complaint that Sale was to finance the purchase out of his own funds, but this was not proven, and the failure to find the fact is a finding that this allegation is untrue. It must be concluded that there was an agreed consideration for the transfer of the stock to Sale. There is no finding that Sale failed to pay or give the consideration contracted for, or of any breach of the contract under which the stock rights were assigned to him. It may be inferred that the lending of his credit and his business skill and ability was the consideration agreed upon, and it does seem that the company acquired the property without selling additional stock as authorized by the Public Service Commission, and without acquiring any new funds except the loan secured by Sale, which presumably has been paid by the company or by Sale or for which they are still liable. Here, then, was a contract by which the other stockholders assigned their dividend stock rights to Sale for a consideration which was nominally for the benefit of the corporation, a third party, but in fact a benefit to the stockholders, with no finding that the consideration and the benefit were not received as agreed. The plaintiff seeks to strike down the consideration which passed to Sale; to recover it, in effect, without returning the consideration which passed from Sale or without reimbursing him in any manner. The issue of the stock dividend did not change the value of the corporate property. It increased the number of shares of each stockholder, but did not increase the

aggregate value of their total share holdings. The result of the issue and the transfer of the dividend stock to Sale was merely to change the proportionate interest of the stockholders in the assets of the corporation by making Sale the majority stockholder. This might have been done as effectively by the assignment of a part of the stock already held by the other stockholders to Sale, but the parties chose the method adopted. As against the appellee, who was the plaintiff and had the burden of proof below, we are required to conclude that because of the superior business judgment and ability of Sale, the remaining stockholders were willing to increase his stock holdings to the extent that he would become the controlling stockholder in consideration of his undertaking to carry through and procure the financing of a program by which the company would acquire considerable new property; that Sale carried out his part of the agreement, which was the consideration for the stock being assigned to him, and acquired for the company the new property which the appellee believed would require an investment of $60,000; that he procured it for the company without recourse to any new capital investment; that all of this resulted in great benefit to the company and all of its stockholders, all of whom stood by, permitting him to go forward with the project, for almost ten years before coming into a court of equity to establish, not fraud, nor breach of the contract by which their stock was assigned to Sale, nor want nor failure of consideration, nor any other fault or failure upon the part of Sale, but merely that the stock which they transferred to Sale as consideration for the purchase of his valuable services and the use of his credit was issued in technical violation of a statute. No injury to the appellee, or any of the stockholders, or to the public is

alleged to have resulted from the issue and transfer of this stock.

The appellee relies upon the dividend stock being void because issued in violation of two statutes. The first is chapter 206 of the Acts of 1921, page 556, which was expressly repealed in 1929 by chapter 215, section 73, page 797, Acts 1929. The appellee contends that this repeal is not effective as to corporations then in existence, a point we need not consider. The title of the act of 1921 is as follows: "AN ACT prohibiting persons, firms, companies, corporations or associations from paying dividends out of funds received for the sale of stock." There are certain provisions in the act itself which are broader than its title, but, under the well-known constitutional requirement that an act may not be broader than its title, these provisions are void and inoperative. Only a stock dividend was here involved, and there is no question of paying dividends out of funds received for the sale of stock. The appellee says that the appellants have attempted to raise a question as to the constitutionality of this act for the first time in this court. But there is no merit in this contention. It was the plaintiff below who relied upon the act. The appellants do not question its constitutionality. They simply call attention to the limitation upon its application.

Appellee contends that the issue of the stock dividend was void because of the provisions of a Public Service Commission act which required the approval of the commission in certain cases before the issue of securities by a public utility. Sections 54-501 et seq., Burns' 1933, sections 14003 et seq., Baldwin's 1934. Appellants contend that the statutes have no application to operators of motor busses and truck lines, and that if they do apply they have been repealed. But we need not notice

these contentions. These statutes affect only the issue of stock and other securities by corporations operating public utilities. If the legislative purpose was to protect corporations and their stockholders against the issuance of securities, no sound basis can be seen for excluding all but public utility corporations. If the legislative purpose was to protect the rate-paying public against over-capitalization of utility companies, a sound basis for classification can be seen, and it must be assumed that the Legislature had such purpose, and that the legislation is regulatory and in the interest of the public. Whether stock issued as dividends without permission of the commission is legal and valid or voidable or void *ab initio* need not be determined.

The action here is not to redress a wrong against the corporation, nor against the stockholders. If the stock was wrongfully issued, it is only because it was forbidden by a statute, and the injury, if any, is to the public. The purpose of this action is not to bring about some equitable adjustment of rights between the parties, but to take advantage of a legal technicality, the effect of which would be to work an unconscionable wrong and injustice. A court of equity will not lend itself to such an enterprise. This attitude has been expressed in many ways. Courts of equity are courts of conscience which do not bind themselves by strict rules of law. Equity looks beneath the rigid rules to find substantial justice. It has power to prevent strict legal rules from working injustice.

In *County of Nassau* v. *City of Long Beach et al.* (1937), 274 N. Y. 458, 461, 9 N. E. (2d) 50, 51, 52, the court said: "When a plaintiff comes into equity asking for unusual and extraordinary relief, it cannot insist on a strict legal right. A city will not be com-

pelled by mandamus to pay even a legal, valid claim for which there exists a clear legal right, if the effect of such a judgment would be to create a great hardship." Or, according to one of the favorite maxims: "He who seeks equity must do equity." He must come with clean hands. He must offer to do justice as a condition to having justice done.

In *Jones, Auditor, etc., et al.* v. *Summer* (1867), 27 Ind. 510, 511, 512, this court said that one who appeals to a court of equity "must rely upon some substantial equity, and cannot avail himself of naked irregularities, or the neglect of mere forms, to shield himself from a liability confessed to be just."

In *McWhinney* v. *Brinker* (1878), 64 Ind. 360, in which relief was sought in equity against an invalid tax sale, the sale was shown to have been illegal. It was held that, although the sale was void, relief would not be given in equity until the party seeking relief had paid the taxes due.

To the same effect, see, also, *Jones et al.* v. *Ewing* (1886), 107 Ind. 313, 6 N. E. 819; *McCoy et al.* v. *Barns et al.* (1894), 136 Ind. 378, 36 N. E. 134; and *Russell* v. *Drake et al.* (1916), 184 Ind. 623, 111 N. E. 186.

The appellee has cited *Spena* v. *Goffe et al.* (1923), 112 Kan. 693, 212 P. 1093, as supporting his contention that the stock issue was void under the statute. But in the Kansas statute there was an express provision that stock issued without the approval of the Public Service Commission was void. It is interesting to note, however, that, although the stock issue was held void, and the facts shown were held insufficient to estop the stockholders from questioning the validity of the stock, it was not held that there could not be an estoppel under proper facts, and the case was reversed with directions to the trial court to find that the property acquired in

consideration of the issue of the illegal stock should be set off as no part of the property of the corporation, or that its value should be set off, and that this should inure to the benefit of the holders of the void stock..

If the plaintiff had been primarily concerned with the illegality of the issue of 108.77 shares of the company's stock issued as a stock dividend, and was willing to do equity, he might have offered as a condition to the cancellation of the 108.77 shares to have surrendered sufficient of his original stock to the defendant Sale so that the stockholders would have the same relative rights in the corporation that they were to have under the agreement by which the stock dividend was declared and assigned to Sale. This would have been offering to do equity. But it is obvious that if the plaintiff had made such an offer he would not have brought the suit, since there would have been nothing to be gained.. If an action should be brought on the part of the state to cancel this issue, the Sales might intervene and bring in the other stockholders so that if the shares were held void or voidable and ordered canceled, the court might make such orders respecting the remaining stock as would do justice between the stockholders under their agreement.

This appeal was perfected by the filing of a transcript of the record and an assignment of errors by all of the appellants on April 22, 1942. The same attorneys appeared for all of the appellants, and they were the attorneys of record for all of the appellants, including the corporation, in the court below. Thereafter, in August, 1942, the appellee and stockholders of the Wabash Valley Coach Company other than the Sales undertook to hold a stockholders' meeting of the corporation and elect directors and officers upon the theory that the judgment was self-executing and that the shares

of dividend stock were void and of no effect. The officers so elected employed an attorney, who filed in this court, in the name of the corporation, under a special appearance, a motion to dismiss the appeal upon the theory that the corporation is not a proper party appellant, that it had not been served with notice, and for other reasons not necessary to notice. It is obvious that the corporation is a mere nominal party, with no interest in the result of this action, which is a controversy between stockholders. It is further obvious that the motion to dismiss, filed by an attorney assuming to act for the corporation, but employed by the appellee and the other stockholders having an interest adverse to the Sales, is made in the interest of the appellee, and for the purpose of avoiding a determination of the appeal upon its merits. The appeal was perfected as a vacation appeal, and notice to the appellee was given below. If the corporation had been made a party appellee, notice to its attorneys of record below would have been sufficient to give this court jurisdiction. But the corporation appealed in its own right by appearing in this court, through its attorneys of record below, and filing a transcript of the record and a bill of exceptions. That was sufficient to give this court jurisdiction of the person of the corporation. There is no contention that the attorneys who filed the appeal were not then authorized by the then officers of the corporation to appear for the corporation and perfect the appeal for it. No one else could speak for the corporation as of that date. The other parties appellant were not required to take any further steps to bring the corporation into court, and their appeal cannot be defeated by the effort of new and later officers of the corporation to revoke the action of the former officers. The motion to dismiss is lengthy and based upon numerous highly technical

contentions, in view of which we notice the suggestion that in the court below there was a temporary injunction as follows: "IT IS THEREFORE ORDERED ADJUDGED AND DECREED by the court that a temporary injunction be and is granted as prayed by the plaintiff in his petition, in full force and effect, and that said temporary injunction be and is granted under promise and providing that no meetings of the stockholders herein are held, all until the further order of this Court." The final judgment from which the appeal is taken begins: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the court that the temporary injunction heretofore granted in this cause be and the same hereby is made perpetual and permanent, and continued in full force and effect." This seems on its face to preclude a meeting of stockholders. The special appearance and motion to dismiss is ordered stricken from the file.

The judgment is reversed, with instructions to the trial court to restate its conclusions of law in conformity with this opinion, and to enter judgment for the defendants.

O'Malley, J., not participating.

NOTE.—Reported in 46 N. E. (2d) 212.