**FARM CREDIT SERVICES OF MID–AMERICA, FLCA, Appellant–Plaintiff,**

v.

**Jay TUCKER, et al., Appellees– Defendants.**

**No. 90A04–0210–CV–520.**

Court of Appeals of Indiana.

July 30, 2003.

---

Howard B. Sandler, Travis S. Friend, Jason M. Kuchmay, Beckman Lawson, LLP, Fort Wayne, IN, Attorneys for Appellant.

Rick M. Myers, Lautzenheiser, Myers & Holdman, PC, Bluffton, IN, Attorney for Appellees.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Farm Credit Services of Mid–America, FLCA ("FCS") filed a complaint seeking a personal judgment against Jay and Julia Tucker and to foreclose a mortgage held by FCS against certain Tucker real estate; it also named as a defendant State Bank of Markle ("Bank"), which also held mortgages on the Tucker real estate. FCS appeals the trial court's order allowing Bank to respond to FCS' motion for summary judgment and holding that Bank's recorded liens were superior to those of FCS.

We affirm.

*ISSUES*

1. Whether the trial court erred when it allowed Bank to respond to FCS' motion for summary judgment when Bank had not requested an extension of time to respond and thirty days had passed since FCS filed that motion.

2. Whether the trial court erred in determining that FCS' secured lien on the Tucker real estate was inferior to and secondary to the recorded liens held by Bank.

*FACTS*

On May 24, 2001, FCS filed a complaint seeking a judgment against the Tuckers for their failure to pay a promissory note and to foreclose on a mortgage that the Tuckers executed to secure their obligations under the note. According to the complaint, the FCS mortgage was executed June 30, 1999, and recorded on July 19, 1999. The complaint named Bank as a defendant "to answer as to any interest claimed in the real estate." (Bank's App. 3). Other defendants were also named. FCS asked the trial court to "determine the priority of the liens in interest of each of the parties in this action as to the real estate," to foreclose FCS' mortgage, and to

order the real estate sold by the sheriff, with the proceeds distributed "to the parties in accordance with their priority as determined by this court." (Bank's App. 4, 5).

Bank responded in its answer that its security interests were "superior to all others of record," and specifically, "superior to that of [FCS]" and FCS' claims were "inferior to those interests of [Bank]." (FCS' App. 51). Thus, Bank asked that "its interests be recognized as superior to all claims of [FCS]." *Id.*

On December 7, 2001, FCS filed a motion for summary judgment, asserting "no genuine issues of material fact" existed and that it was entitled "to judgment as a matter of law" and "to an Order of Foreclosure" with respect to its mortgage. (FCS' App. 53). FCS designated as its evidence "all pleadings" and an affidavit from an FCS loan officer averring FCS' mortgage had been recorded on July 19, 1999. (FCS' Aff. 53). In its accompanying memorandum in support of summary judgment, FCS argued that its mortgage was "superior to" that of any defendant and "t[ook] priority to all others of record absent any evidence to the contrary," noting that although Bank had "alleged a security interest superior to all others of record, it ha[d] not come forward with any designated evidence" thereof. (FCS' App. 57, 58, 59).

Two defendants, Homan, Inc. and Sauder Feeds, Inc., asked the trial court for an extension of time in which to respond to the FCS motion for summary judgment. The trial court granted an extension until January 25, 2002.

On January 18, 2002, Bank filed a motion for summary judgment, asserting that its recorded liens were superior to that held by FCS. Bank submitted as designated evidence copies of its recorded mortgages, the latest of which pre-dated the

mortgage held by FCS by more than a year. On February 11, 2002, FCS filed a motion to strike and a memorandum opposing Bank's motion. FCS asked the trial court to strike Bank's designated evidence because the mortgages it submitted were neither sworn to by affidavit nor certified. FCS also argued that because Bank had failed to file a timely response to FCS' motion for summary judgment and there was no "evidence that FCS is not first in priority," the trial court should grant FCS' motion for summary judgment. (FCS' App. 155). Accordingly, FCS asked that the trial court order foreclosure, sale of the Tuckers' real estate by the sheriff, and the proceeds applied "to reduce the Tuckers' obligation to FCS before any sums are distributed to any other party." *Id.*

On March 27, 2002, Bank filed a motion for enlargement of the time in which to respond to a motion for summary judgment, for permission to file belated designated material to supplement the record, and to consider Bank's motion for summary judgment as both a cross-motion and an answer to FCS' motion for summary judgment. In its motion, Bank asserted that a summary judgment hearing was scheduled for May 1, 2002; that the dates of Bank's recorded mortgages were matters of public record; and that the only supplemental material Bank sought to submit was the properly certified information about its mortgages. On March 28, 2002, the trial court granted Bank's motion, finding it "only appropriate for a court to be fully informed of all facts and law when summary remedies are sought," and supplemental filings would "insure the full disclosure of all documents, facts, and law applicable." (Bank's App. 8). The trial court granted Bank "until April 17, 2002 to supplement and other parties . . . to April 25, 2002 to respond" and noted the pend-

ing May 1, 2002 hearing on the matter. *Id.* Bank then filed designated evidence as to the Tuckers' obligations to Bank.

At the hearing on May 1, 2002, FCS argued that Bank had failed to timely respond to its motion for summary judgment, that the trial court lacked "the discretion or the authority to allow the belated filings or to grant the extension of time," and that, therefore, FCS was entitled to summary judgment. (FCS' App. 36). Bank noted that FCS was "not arguing that the public record is wrong or that the documents are incorrect or that they actually had a priority" and asserted that summary judgment should be based on "the complete and total record." (FCS' App. 39, 40). Thereafter, having reviewed the designated materials, the trial court determined that Bank was "entitled to summary judgment" and had "a secured, priority lien against the real estate in question superior to all other claims of creditors except for delinquent and current taxes due." (FCS' App. 11). In a subsequent detailed order, the trial court found that FCS' motion for summary judgment "did not request or allege a priority of their claim" but simply sought an order of foreclosure. (FCS' App. 14). The trial court further held that based upon all of the designated evidence ultimately submitted, there was "no genuine question of fact" and "[Bank's] liens" were "superior" because they were "previous in date and perfected prior to those of [FCS]." (FCS' App. 15). It ordered foreclosure, sale, and distribution of the proceeds accordingly. The property was sold, and the proceeds were distributed to effect the trial court's determination that Bank held a higher priority than FCS due to its earlier recorded mortgage.

*DECISION*

### 1. *Bank's Filing of Designated Evidence*

FCS first claims that the trial court abused its discretion when it allowed Bank to file designated evidence because Bank neither so filed within the time frame of Indiana Trial Rule 56 nor requested an extension within that time frame. We disagree.

We do, however, agree with FCS' assertion that the standard whereby we review a trial court's action in "altering the time limits on summary judgment is governed by the abuse of discretion standard." (FCS' Brief at 5, citing *Turner v. Bd. of Aviation Comm'rs*, 743 N.E.2d 1153, 1159 (Ind.Ct.App.2001), *trans. denied; Indiana Univ. Med. Ctr. v. Logan*, 728 N.E.2d 855, 858 (Ind.2000); *Markley Enters., Inc. v. Grover*, 716 N.E.2d 559, 562 (Ind.Ct.App. 1999)). And an abuse of discretion occurs "when the trial court's decision is against the logic and effect of the facts and circumstances before it." *Turner*, 743 N.E.2d at 1159.

Indiana Trial Rule 56(C) provides that after one party files a motion for summary judgment, "an adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." FCS' motion was filed on December 7, 2001, and FCS computes that Bank's response was due on or before January 10, 2002. It is undisputed that Bank did not file its responsive material within this period. But Indiana Trial Rule 56(I) states that the trial court "for cause found, may alter any time limit set forth" in Rule 56.

FCS cites *Thayer v. Gohil*, 740 N.E.2d 1266 (Ind.Ct.App.2001), *trans. denied,* and *Markley*, 716 N.E.2d 559, for the proposition that the trial court may only alter the Rule's time limit for filing a response if the party so requests within the time period allowed for a response. We consider each in turn.

In *Thayer*, a medical negligence action, the nonmovant "timely filed a motion for an extension of time to respond" to a motion for summary judgment, 740 N.E.2d at 1267, and the motion was granted. Before the deadline of the extension, the nonmovant filed a second motion for extension of time, and it was also granted. However, her response was not filed until two days after the deadline of the second extension. The trial court granted the movant's motion to strike the response. We found that the trial court did not abuse its discretion because within the time allowed for her response, the nonmovant failed to either (1) seek a further extension, or (2) show cause for alteration of time.

In *Markley*, a wrongful termination claim, the trial court had granted the nonmovant's motion for an extension of time in which to respond to a motion for summary judgment. Relying on *Seufert v. RWB Medical Income Properties*, 649 N.E.2d 1070 (Ind.Ct.App.1995), we found that the trial court had erred because within thirty days of the motion for summary judgment, the nonmovant did not respond, did not request an extension of time, and did not otherwise explain the cause of his delay.

We acknowledge that these cases appear to establish as a matter of black-letter law that the trial court holds utterly no authority to allow any response to a motion for summary judgment unless some action in that regard is initiated within the initial thirty-day time period. Would not such have been the result before Section (I) was added to Rule 56 in 1991? If so, why was Section (I) added? The wording of Section (I) itself does not appear to import such rigidity as to forbid any discretion on the part of the trial court absent compliance with a mandatory precondition. The mandatory precondition was crafted by case law. Therefore, we turn to some additional considerations as we determine whether the trial court abused its discretion in this case.

Certain facts can be seen to weigh on the side of allowing Bank to submit its material. As the trial court noted, it had granted two other defendants until January 25, 2002, to file their responses. Bank first filed summary judgment material on January 18, 2002, before the extension deadline. Also, pursuant to Rule 56, the trial court is required to conduct a hearing on the motion for summary judgment "not less than ten (10) days after the time for filing the response." *See also Brown v. Banta*, 682 N.E.2d 582, 585 (Ind.Ct.App. 1997), *trans. denied*, (noting the requirement that "any response be filed at least ten days before the summary judgment hearing."). According to the CCS, the first date set for a summary judgment hearing was January 29, 2002. This was more than ten days after Bank's filing. Ultimately, the summary judgment hearing took place on May 1, 2002, after Bank had filed its supplemental material on March 28, 2002.

Finally, we place particular weight on the subject matter in this case: foreclosure. As our supreme court has recently reaffirmed: "foreclosure actions are essentially equitable." *Songer v. Civitas Bank*, 771 N.E.2d 61, 69 (Ind.2002). Hence, FCS' complaint sought the trial court's exercise of its equitable powers. When the court acts in equity, it is not bound "by strict rules of law" and "looks beneath the rigid rules," exercising its "power to prevent strict legal rules from working injustice." *Wabash Valley Coach Co. v. Turner*, 221 Ind. 52, 46 N.E.2d 212, 217 (1943), *cert. denied* 319 U.S. 754, 63 S.Ct. 1167, 87 L.Ed. 1707. Also, a court of equity has the power to require that to be done which should have been done. *Rosenbloom v. Hutchins*, 222 Ind. 590, 55 N.E.2d 315, 318 (1944).

Here, the dispositive facts as to the priorities of the respective mortgages are contained in public records. FCS does not challenge the validity of Bank's mortgages, nor the propriety of their recording. When the trial court permitted a belated, supplemental filing by Bank, its order appears to indicate "cause found" for altering the time limit. Ind. T.R. 56(I). Specifically, it cited the importance of the trial court being "fully informed of all facts and all law when summary remedies are sought" and the need for "full disclosure of all documents, facts and law applicable." (Bank's App. 8). Based upon the facts and circumstances before the trial court and the language of Trial Rule 56(I), we do not find that the trial court abused its discretion when it allowed Bank to file designated evidence in response to FCS' motion for summary judgment. *See Turner,* 743 N.E.2d at 1159.

### 2. *Superiority of Bank's Lien*

FCS next argues that the trial court erred when it "relied upon the Bank's improperly filed designations to rule that the Bank had priority over FCS." FCS' Brief at 4. Thus, FCS contends, there was "no competent evidence before the trial court that would demonstrate that any party has priority over FCS." *Id.*

We have found that the trial court did not err in allowing Bank to file the designated evidence. This evidence established that Bank's recorded mortgages predate the FCS mortgage. Hence, FCS' second argument must fail.

We affirm.

BAKER, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I agree that the trial court did not err in permitting Bank to file its supplemental materials in response to the Motion for Summary Judgment filed by FCS. In doing so I would merely make an additional observation.

Whether or not Bank had even tendered or filed such designated materials addressed to the Motion of FCS prior to the expiration of the thirty day provision of T.R. 56(C), i.e. January 10, 2002, it is my view that such would not have been necessary to make the granting of FCS's Motion inappropriate.

Prior to the time of the hearing upon FCS's Motion, i.e. May 1, 2002, Bank had filed its own Motion for Summary Judgment on January 18, 2002. Although this Motion was arguably deficient in its supporting documentation, the Motion and its accompanying material were adequate to at least disclose a genuine issue of fact as to the priority of the respective liens. Such state of the record as of that date would therefore disclose that FCS had not carried its burden under T.R. 56(C) to demonstrate its entitlement "to a judgment as a matter of law." The subsequently filed supplemental materials merely further weakened the argument of FCS that it was entitled to summary judgment.

It may additionally be noted that at the point in time that the trial court was considering the propriety of FCS's Motion for Summary Judgment, at the May 1, 2002 hearing, it would have been appropriate based upon the state of the record at that time to enter a summary judgment in favor of the Bank even if Bank had not filed its own Motion for Summary Judgment. *See* T.R. 56(B).

Despite these additional comments, I fully concur in the majority opinion.