# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**DINA M. COX**
**JANELLE P. KILIES**
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**J. BLAKE HIKE**
**LARRY L. BARNARD**
**MARK D. ULMSCHNEIDER**
Carson Boxberger LLP
Fort Wayne, Indiana

FILED
Mar 24 2014, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PURDUE UNIVERSITY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1304-PL-342 |
| | ) | |
| MICHAEL A. WARTELL, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1205-PL-21

**March 24, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

The question we address today is this: may a party be equitably estopped from asserting the attorney-client privilege and the work-product doctrine? In this case, Purdue University promised Chancellor Michael A. Wartell that an independent investigator acceptable to him, who was preferably (but not necessarily) an attorney, would be appointed to investigate a complaint that he had filed against Purdue's president, pursuant to specified procedures. Purdue then appointed an attorney acceptable to Wartell to investigate his complaint. In accordance with the specified procedures, the attorney interviewed Wartell, the president, and others and submitted a report with his determinations and recommendations regarding Wartell's complaint to a panel of Purdue's trustees.

Wartell requested the report from Purdue's public records officer, who denied the request based on the attorney-client privilege and the work-product doctrine. Wartell then filed a complaint with the state public access counselor, who determined that Purdue could assert the attorney-client privilege if the attorney "was acting as the University's attorney" in investigating Wartell's complaint, but not if he was "acting solely as an independent investigator." Appellant's App. at 26, 25.

Wartell then filed a lawsuit to compel Purdue to allow him to inspect or copy the attorney's report. He deposed the attorney and the Purdue vice president who hired him. Both refused to answer certain questions based on the attorney-client privilege and the work-product doctrine. Wartell asked the trial court to determine as a preliminary matter that "due to the surreptitious circumstances surrounding Purdue's hiring of [the attorney], principles of

2

equity estop Purdue from asserting the attorney-client privilege and the work-product doctrine to prevent disclosure of anything related to [the attorney's] investigation of Wartell's complaint[.]" *Id*. at 38. He also asked the trial court to compel the attorney and the vice president to answer the unanswered deposition questions. The trial court ruled that Purdue was equitably estopped from asserting the attorney-client privilege and the work-product doctrine and ordered the deposition questions to be answered.

On appeal, Purdue argues that the trial court's ruling is erroneous, noting that confidentiality is a fundamental aspect of the attorney-client relationship and that the attorney-client privilege and the work-product doctrine have few recognized exceptions. Based on the record before us, it is not necessary for us to determine whether the attorney acted as Purdue's legal counsel, as opposed to an independent investigator who happened to be an attorney. The attorney conducted his investigation in accordance with the specified procedures to be followed by the independent investigator, and the attorney did not inform Wartell that he was acting as Purdue's legal counsel, as would be required under the Indiana Rules of Professional Conduct. If the attorney was not acting as Purdue's legal counsel, then Purdue may not assert the attorney-client privilege and the work-product doctrine to prevent disclosure of the information that Wartell seeks.

But assuming for argument's sake that the attorney was acting as Purdue's legal counsel, we note that evidentiary privileges created "to shield selected information from discovery … may not be wielded as swords at the will of a party." *Madden v. Ind. Dep't of Transp.*, 832 N.E.2d 1122, 1128 (Ind. Ct. App. 2005). Moreover, it has long been recognized

3

that "[e]quity looks beneath the rigid rules to find substantial justice" and "has the power to prevent strict legal rules from working injustice." *Wabash Valley Coach Co. v. Turner*, 221 Ind. 52, 65, 46 N.E.2d 212, 217 (1943), *cert. denied*. "Equitable estoppel is available if one party, through its representations or course of conduct, knowingly misleads or induces another party to believe and act upon their conduct in good faith and without knowledge of the facts." *Am. Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224, 234 (Ind. Ct. App. 2004), *trans. denied*.

Here, Purdue represented to Wartell that it would appoint an independent investigator to investigate his complaint, but then concealed from Wartell that it hired an attorney it intended to serve as its legal counsel; thus, Wartell never had an opportunity to object to the attorney's appointment on that basis. Relying on Purdue's representation, Wartell allowed the attorney to interview him, the president, and others and submit an investigative report with determinations and recommendations regarding his complaint to a panel of Purdue's trustees. Based on these facts and circumstances, we cannot say that the trial court erred in ruling that Purdue should be equitably estopped from invoking the attorney-client privilege and the work-product doctrine as to Wartell. Therefore, we affirm.

## Facts and Procedural History[1]

Purdue, a public university, employed Wartell as chancellor of the Indiana University-Purdue University Fort Wayne campus. On September 12, 2011, Wartell filed a formal complaint alleging harassment and discrimination against France Córdova, Purdue's

---

[1] We held oral argument on December 17, 2013. We thank the parties for their presentations.

president at the time, pursuant to Purdue's internal complaint process. Typically, a formal complaint is investigated by a Purdue employee, who submits a report to a university official, who then submits the report to and meets with a three-member panel selected by the official from the Advisory Committee on Equity. Upon request, the complainant and the respondent may meet with the official and the panel. Within ten days after meeting with the panel, the official must make a written determination whether a violation of university policy occurred. Wartell expressed concern to Purdue's vice president for ethics and compliance, Alysa Rollock, that "those involved in the process report to the president of the University." Appellant's App. at 167.

On September 21, 2011, Rollock sent a letter to Wartell and Córdova that reads in pertinent part as follows:

> Following consultation with the Board of Trustees, I have been authorized to communicate with you regarding the process to be followed in connection with the formal complaint (the "Complaint") filed by Chancellor Wartell on September 12, 2011.
>
> In light of concerns expressed regarding the appropriateness of the process outlined in Purdue University's Procedures for Resolving Complaints of Discrimination and Harassment (the "Procedures") as applied to you in this matter, the University offers to proceed as follows:
>
> 1. An independent investigator (preferably an Indiana attorney with a practice in the area of higher education) (the "Investigator") acceptable to each of you will be appointed by me to conduct a thorough investigation of the Complaint, including interviews with each of you and others as the Investigator may deem appropriate. The Investigator will be asked to work expeditiously with a goal of concluding the investigation within 45 days.
>
> 2. As in the Procedures, the first undertaking of the Investigator will be to interview Chancellor Wartell and make a determination as to whether

5

any of the allegations, if substantiated, would constitute a violation of the University's Anti-Harassment and Equal Opportunity policies (the "Policies"). In the event that the Investigator determines that any of the allegations, if substantiated by a preponderance of the evidence, would constitute a violation of the Policies, he/she will conduct an investigation into such allegations. Upon the completion of the investigation, the Investigator will determine whether: (a) any of the investigated allegations have been substantiated by a preponderance of the evidence, whether there has been a violation of the Policies, and a recommendation of sanctions, if any; and (b) the Complaint was knowingly false or malicious, and a recommendation of sanctions, if any.

3.      The Investigator will prepare and deliver to a three-member panel (the "Panel") a report that indicates his/her determinations as described in paragraph 2. The Panel will then meet and members of the Panel shall consider: (a) the Investigator's report; (b) the Complaint and the Respondent's response; and (c) in the event the Panel requests additional information from the Investigator or either party, the written submissions provided to the Panel in response to such requests. The parties will not meet with the Panel.

4.      The Panel will be selected by me from members of the Board of Trustees (excluding the student Trustee). Before the selection, each of you will have an opportunity to provide me with the names of up to two Trustees to be stricken from consideration for the Panel. I will select the Panel from the remaining Trustees.

5.      The decision of the Panel, which will be in writing and provided to me and to each of you, will constitute the University's final action on the matter.

If this process is acceptable to you, please sign and return the attached letter to me by the close of business on September 26, 2011.

*Id*. at 192-93. Wartell objected to a waiver provision in the attached letter but otherwise accepted the process outlined above. Apparently, Córdova also accepted the process.

Rollock presented Wartell and Córdova "with a list of attorneys to which they could indicate their objections." *Id*. at 166. Rollock received their responses and contacted

6

attorney John Trimble on November 2, 2011, to ask him "whether he was available and would be able to take on the process" of investigating Wartell's complaint. *Id*. at 174. Trimble indicated that he would. On November 7, 2011, Rollock spoke with Trimble about the terms of his engagement and sent him a follow-up email outlining those terms, which essentially mirror the investigator's responsibilities mentioned in paragraphs 2 and 3 of her letter to Wartell and Córdova. *Id*. at 187. Rollock's email further stated, "The parties will be notified of your appointment. They and any persons whom you wish to interview will be expected to cooperate fully with you, including making themselves available for interviews and providing any emails or other documents that you may require." *Id*. A few days later, Trimble sent Rollock a letter confirming his engagement. Trimble interviewed Wartell and Córdova and ten to twelve other witnesses he learned about from Wartell. He then prepared a report and sent a copy to each of the Panel members on February 1, 2012.[2]

In March 2012, Wartell requested Trimble's report "and any other document" prepared by Trimble regarding his complaint from Purdue's public records officer, Lucia Anderson. *Id*. at 21.[3] Indiana Code Section 5-14-3-3(a) of Indiana's Access to Public Records Act ("APRA") provides that "[a]ny person may inspect and copy the public records of any public agency during the regular business hours of the agency, except as provided in

---

[2] According to Purdue, "[t]he panel then met to consider Attorney Trimble's Report, Wartell's complaint, and Córdova's response. Following this meeting, the panel rendered a decision, in writing, which was delivered to both Wartell and Córdova and which constituted Purdue's final action in the matter." Appellant's Br. at 4 (citation to appendix omitted). The decision is not in the record before us.

[3] Wartell claims that he made his request "because Trimble and Rollock represented to several interviewees that the report would be subject to disclosure under public records laws[.]" Appellee's Br. at 4. Wartell cites no evidence to support this claim.

7

section 4 of this chapter." Anderson denied Wartell's request in a letter that reads in pertinent part as follows:

- Indiana Code 5-14-3-4(a)(8) provides an exception for records that are "declared confidential by or under the rules adopted by the supreme court of Indiana." These provisions have been interpreted as creating a mandatory exception to the disclosure requirement of Section 3 for public records that are communications between public agency and its legal counsel.

- In addition, it is also denied under IC 5-14-3-4(b)(2) that provides that a public agency has discretion to except from disclosure: The work product of an attorney representing, pursuant to … an appointment by a public agency [sic]. The Report is therefore exempted from disclosure because it is the work product of an attorney representing a public agency.

*Id*. According to Wartell, this is the first time that he had been made aware that "Purdue engaged Trimble as its attorney," and he "would not have agreed to the alternative process or spoken with Trimble had [he] known Purdue engaged him as its attorney and not the promised independent investigator." *Id*. at 94-95 (affidavit).

Wartell then filed a complaint with the state public access counselor, Joseph B. Hoage, who issued an advisory opinion that reads in relevant part as follows:

> The University has provided that certain records were deemed to be confidential pursuant to state law regarding attorney-client communication or were the work product of an attorney pursuant to I.C. § 5-14-3-4(b)(2). One category of nondisclosable public records consists of records declared confidential by a state statute. *See* I.C. § 5-14-3-4(a)(1). I.C. § 34-46-3-1 provides a statutory privilege regarding attorney and client communications.[4] Indiana courts have also recognized the confidentiality of such communications ….

---

[4] Indiana Code Section 34-46-3-1 provides in pertinent part, "Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases."

8

Pursuant to I.C. § 5-14-3-4(b)(2) a public agency has the discretion to withhold a record that is the work product of an attorney representing, pursuant to state employment or an appointment by a public agency: a public agency; the state; or an individual.

> "Work product of an attorney" means information compiled by an attorney in reasonable anticipation of litigation and includes the attorney's:
> (1) notes and statements taken during interviews of prospective witnesses; and
> (2) legal research or records, correspondence, reports, or memoranda to the extent that each contains the attorney's opinions, theories, or conclusions.
> I.C. § 5-14-3-2(p) [now (r)].

There is no dispute that the University is subject to the APRA. Once the investigative report and materials were created and/or received by the University they became a public record. *See* I.C. § 5-14-3-2(n) [now (o)]. It is immaterial what was alleged to have been communicated between the parties during the pendency of the investigation regarding whether the records would be subject to disclosure. Once the University received your request for records pursuant to the APRA, it would have been required to either provide or cite to an applicable specific exception found in state or federal law that either prohibited disclosure or granted discretion to the University to produce the record.

The key inquiry whether the University may cite to I.C. § 5-14-3-4(b)(2) or the attorney client privilege to deny your request is whether Mr. Trimble was acting as the University's attorney during the investigation. You allege that Mr. Trimble was acting as an independent investigator, relying on University correspondence provided to you and after being informed by the University that the report and supporting materials would be available for inspection. The University and Mr. Trimble deny that you were informed that the records would be subject to disclosure and that Mr. Trimble was acting in his capacity as an attorney in creating the report and the supporting materials on behalf of the University.

The University in its September 20, 2011 correspondence provided that "an *independent investigator* (preferably an Indiana attorney with a practice in the area of higher investigation [sic]) acceptable to each of you will be appointed by me to conduct a thorough investigation of the Complaint …" (emphasis added). Further, Ms. Anderson provided in her response to your

formal complaint that "… the work performed by Mr. Trimble was done in his capacity as *an attorney* and that his investigative report and materials are privileged." (emphasis added). In order for the University to cite to the above referenced attorney exceptions, Mr. Trimble would be required to acting [sic] as an attorney on behalf of the University, not just acting as "an attorney".

The public access counselor is not a finder of fact. Advisory opinions are issued based upon the facts presented. If the facts are in dispute, the public access counselor opines based on both potential outcomes. A court would be empowered to make factual determinations regarding Mr. Trimble['s] status and the University's denial pursuant to I.C. § 5-14-3-9(e)-(i).[5] As applicable here, if in investigating the complaint, Mr. Trimble was acting solely as an independent investigator, the University may not cite to I.C. § 5-14-3-4(b)(2)

---

[5]  Indiana Code Section 5-14-3-9 reads in relevant part,

(e) A person who has been denied the right to inspect or copy a public record by a public agency may file an action in the circuit or superior court of the county in which the denial occurred to compel the public agency to permit the person to inspect and copy the public record…

(f) The court shall determine the matter de novo, with the burden of proof on the public agency to sustain its denial.…

(g) If the issue in a de novo review under this section is whether a public agency properly denied access to a public record because the record is exempted under section 4(b) of this chapter:
      (1) the public agency meets its burden of proof under this subsection by:
            (A) proving that the record falls within any one (1) of the categories of exempted records under section 4(b) of this chapter; and
            (B) establishing the content of the record with adequate specificity and not by relying on a conclusory statement or affidavit; and
      (2) a person requesting access to a public record meets the person's burden of proof under this subsection by proving that the denial of access is arbitrary or capricious.

(h) The court may review the public record in camera to determine whether any part of it may be withheld under this chapter.…

(i) In any action filed under this section, a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation to the prevailing party if:
      (1) the plaintiff substantially prevails; or
      (2) the defendant substantially prevails and the court finds the action was frivolous or vexatious.
The plaintiff is not eligible for the awarding of attorney's fees, court costs, and other reasonable expenses if the plaintiff filed the action without first seeking and receiving an informal inquiry response or advisory opinion from the public access counselor, [with an exception not relevant here].

or the attorney-client privilege in denying your request. However, if Mr. Trimble was acting as the University's attorney during the investigation, the University may cite to I.C. § 5-14-3-4(b)(2) and the attorney-client privilege to deny the request.

CONCLUSION

For the foregoing reasons, it is my opinion that the University did not violate the APRA and would be allowed to cite to the attorney-client privilege or I.C. § 5-14-3-4(b)(2) in denying your request for records if Mr. Trimble was acting as the University's attorney in conducting the investigation into your complaint.

*Id*. at 23-26 (citation omitted).

Pursuant to Indiana Code Section 5-14-3-9, Wartell filed the instant lawsuit to compel Purdue to allow him to "inspect or copy Trimble's investigation report." *Id*. at 11. Wartell deposed Trimble and Rollock, who refused to answer certain questions based on the attorney-client privilege and the work-product doctrine. Wartell filed a motion for the court to determine as preliminary matters that Purdue engaged Trimble as its attorney to investigate "and to advise Purdue and/or its Board of Trustees on the merits of Wartell's complaint" and that "due to the surreptitious circumstances surrounding Purdue's hiring of Trimble, principles of equity estop Purdue from asserting the attorney-client privilege and work product doctrine to prevent disclosure of anything related to Trimble's investigation of Wartell's complaint[.]" *Id*. at 38. Wartell also asked the trial court to compel Trimble and Rollock, pursuant to Indiana Trial Rule 37, "to answer all of the unanswered certified questions asked during their depositions and any additional questions Wartell's counsel

11

otherwise would have asked, and compelling them to submit to further deposition testimony."[6] *Id.* Wartell also requested attorney's fees.

After a hearing, the trial court issued the following order:

> The Court having had under advisement the Plaintiff's Motion for Preliminary Determination and Motion to Compel now determines that the princip[les] of equity estop Purdue University from asserting the attorney-client privilege and work product doctrine to prevent disclosure of anything related to Trimble's investigation of Wartell's Complaint. Accordingly, Defendant Purdue University is ordered to answer the unanswered certified questions asked during the depositions of Trimble and Rollock.

> The Plaintiff's request for attorney's fees is denied.

*Id.* at 200. Purdue now brings this discretionary interlocutory appeal.[7]

**Discussion and Decision**

Generally, we review a challenge to a discovery order for an abuse of discretion. *State v. Int'l Bus. Mach. Corp.*, 964 N.E.2d 206, 209 (Ind. 2012). We note that "[t]he attorney-client privilege is one of the oldest recognized privileges for confidential communications. The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Gast v. Hall*, 858 N.E.2d 154, 163 (Ind. Ct. App. 2006), *trans.*

---

[6] Trial Rule 37(A)(2) provides that "if a deponent fails to answer a question propounded or submitted under Rule 30 or 31, … the discovering party may move for an order compelling an answer …." Trial Rule 37(A)(4) provides that if the motion is granted, the trial court

> shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

[7] Wartell does not appeal the denial of his request for attorney's fees.

12

*denied* (2007). "The privilege applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities." *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721, 724 (Ind. Ct. App. 1995).

> The attorney-client privilege protects against judicially compelled disclosure of confidential information regardless of whether the information is to be disclosed by way of testimony or by court-ordered compliance with a discovery request which a party has attempted to resist. The harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself.

*P.T. Buntin, M.D., P.C. v. Becker*, 727 N.E.2d 734, 740 (Ind. Ct. App. 2000).

The work-product doctrine was first established by the U.S. Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). "The work-product doctrine prohibits a party in litigation from obtaining from another party its 'attorney's notes and memoranda reflecting the attorney's theories and mental impressions about the case.'" *Penn. Cent. Corp. v. Buchanan*, 712 N.E.2d 508, 516 (Ind. Ct. App. 1999) (quoting *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 169 n.7 (Ind. 1996)), *trans. denied*. Indiana Trial Rule 26(B)(3) governs the work-product doctrine. *Id.*

> The rule provides that a party may obtain discovery of documents and tangible items prepared by another party's attorney in anticipation of litigation or for trial but "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

*Id.* (quoting Ind. Trial Rule 26(B)(3)).

> Although a party may obtain discovery of ordinary work product materials by making a special showing, a party seeking discovery is never entitled to the

13

> mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation. Such material, often called opinion work product, is entitled to absolute protection from discovery.

*Nat'l Eng'g & Contracting Co. v. C & P Eng'g & Mfg. Co.*, 676 N.E.2d 372, 376 (Ind. Ct. App. 1997) (citation omitted).

It is true, as Purdue observes, that the attorney-client privilege and the work-product doctrine have few recognized exceptions, and that equitable estoppel is not one of them. *See, e.g.*, *Lahr v. State*, 731 N.E.2d 479, 483 (Ind. Ct. App. 2000) (recognizing crime-fraud exception to attorney-client privilege); *Becker*, 727 N.E.2d at 740 (recognizing that client may waive privilege by disclosing or consenting to disclosure of privileged matter); Ind. Trial Rule 26(B)(3) (establishing undue hardship exception to work-product doctrine). It is also true, however, that evidentiary privileges created "to shield selected information from discovery … may not be wielded as swords at the will of a party." *Madden*, 832 N.E.2d at 1128. Moreover, it has long been recognized that "[e]quity looks beneath the rigid rules to find substantial justice" and "has the power to prevent strict legal rules from working injustice." *Wabash Valley Coach Co.*, 221 Ind. at 65, 46 N.E.2d at 217. "Equitable estoppel is available if one party, through its representations or course of conduct, knowingly misleads or induces another party to believe and act upon their conduct in good faith and without knowledge of the facts." *Am. Family Mut. Ins. Co.*, 803 N.E.2d at 234.

> The elements of equitable estoppel are: (1) a representation or concealment of a material fact, (2) made by a person with knowledge of the fact and with the intention that the other party act upon it, (3) to a party ignorant of the fact, and (4) which induces the other party to rely or act upon it to his detriment.

*Id.*

14

Based on the record before us, it is not necessary for us to determine whether Trimble was hired as Purdue's legal counsel, rather than simply as an independent investigator who happened to be an attorney.[8] In her deposition, Rollock stated that Trimble was hired as Purdue's legal counsel. *See* Appellant's App. at 172 ("Q. Was [Trimble] counsel for Purdue University investigating the complaint? A. Yes, he was."). Trimble gave a similar response in his deposition. *See id.* at 133 ("Q. And at the time that you sent this engagement letter on November 9, 2011, did you believe that an attorney-client relationship had been formed between you and Purdue University? A. Yes."). But Trimble later acknowledged that "[t]his was not a case where [his] engagement required [him] to be an advocate on behalf of Purdue University" and that he "owed it to everyone involved to do a thorough, competent and fair investigation[.]" *Id.* at 136. And Trimble conducted his investigation in accordance with the specified procedures to be followed by the independent investigator, as described in Rollock's letter to Wartell.

Moreover, Trimble stated that he did not inform Wartell that he was representing Purdue when he interviewed him during the investigation. *Id.* at 140. This is telling, inasmuch as the Indiana Rules of Professional Conduct clearly indicate that if Trimble had been acting as an advocate for Purdue, he would have had a duty to disclose this fact to

---

[8] As stated above, Purdue indicated to Wartell that the investigator did not have to be an attorney. *See* Appellant's App. at 192 (providing for appointment of "[a]n independent investigator (*preferably* an Indiana attorney with a practice in the area of higher education)") (emphasis added). Purdue does not assert that only a lawyer could have investigated Wartell's complaint and made recommendations to the Panel. In fact, Rollock acknowledged that nonlawyers had investigated internal complaints and made recommendations before. *Id.* at 171-72. She also stated that a majority "of the investigations had been conducted by persons who are attorneys, *although not counsel for the university.*" *Id.* at 172 (emphasis added).

Wartell. *See* Ind. Professional Conduct Rule 1.13(f) ("In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.").[9] To the contrary, Trimble conducted the investigation by interviewing individuals, drafting a report, and submitting it to the Panel without disclosing an advocate

---

[9] A recent law review article explores the ethical issues that often arise during corporate internal investigations, in which the corporation's lawyer is required to "interview employees, officers, directors, or other individuals related to the entity." Grace M. Giesel, *Upjohn Warnings, the Attorney-Client Privilege, and Principles of Lawyer Ethics: Achieving Harmony*, 65 U. MIAMI L. REV. 109, 110 (Fall 2010). The Upjohn referred to here is *Upjohn Co. v. United States*, 449 U.S. 383 (1981), "in which the United States Supreme Court affirmed that an entity, such as a corporation, can have an attorney-client privilege." *Id.* at 110 n.2. In *Upjohn*, "the Court clarified that the corporation's privilege rightly could attach to communications between a lawyer and a variety of constituents of the entity and was not simply limited to communications between a lawyer for the entity and the control-group individuals." *Id.* The article goes on to say,

> The lawyer, seeking to render the best possible representation to the entity client, wishes to obtain complete and unfettered disclosure by the individuals with whom the lawyer communicates. The more complete the disclosure, the better counsel the lawyer can give to his or her client, the entity.

> The individual in this tripartite situation may be inclined to disclose all to the lawyer because the individual does not truly understand where the loyalties of the lawyer and the entity lie. The individual may view the entity, the lawyer, and the individual as on the same team, just as they are with regard to the typical day-to-day happenings involving the entity. The individual may not understand that the attorney does not view the individual as a client. The individual may not understand that the attorney places the entity's interest well above that of the individual. The individual may not realize that he or she has no right to block disclosure of his or her own communications with the attorney. The individual may not realize that statements made to the attorney ultimately might be used against the individual by the entity or other parties, such as the government in a criminal prosecution.

> The lawyer could eliminate any confusion of roles by clearly explaining, in writing or otherwise, the situation to the individuals with whom the lawyer talks. A lawyer's explanation to the individual in the tripartite situation has been referred to as a corporate Miranda warning or an Upjohn warning. In fact, the rules of professional responsibility governing lawyer conduct require the lawyer in the tripartite situation to be honest and forthright.

*Id.* at 110-11 (footnotes omitted). The "confusion of roles" is even more apparent in this case, where it is not altogether clear whether Trimble was acting as Purdue's attorney.

role. In other words, Trimble conducted the investigation as an independent investigator.[10]

Like the old adage, Trimble's actions speak louder than words, or, in this case, the assertions made by Purdue. If Trimble was acting solely as an independent investigator and not as Purdue's legal counsel, then Purdue may not assert the attorney-client privilege or the work-product doctrine to prevent disclosure of the information that Wartell seeks.

But assuming for argument's sake that Trimble was acting as Purdue's legal counsel, several observations are in order. First, Purdue represented to Wartell that it would appoint Trimble as an independent investigator, but then concealed from Wartell that it intended to retain Trimble as its legal counsel; thus, Wartell never had an opportunity to object to Trimble's appointment on that basis. Relying on Purdue's representation that Trimble was an independent investigator, Wartell allowed Trimble to interview him, Córdova, and approximately a dozen others and submit an investigative report with determinations and recommendations regarding his complaint to the Panel. Based on these facts and circumstances, we cannot say that the trial court abused its discretion in ruling that Purdue should be equitably estopped from invoking the attorney-client privilege and the work-product doctrine as to Wartell.[11] Therefore, we affirm.

---

[10] Consequently, we are unpersuaded by Purdue's reliance on *Sandra T.E. v. South Berwyn School District*, 600 F.3d 612 (7th Cir. 2009).

[11] We are not asked to determine whether the matters at issue would be privileged on any other basis or as to anyone other than Wartell. Purdue frets that recognizing equitable estoppel as an exception to the attorney-client privilege and the work-product doctrine "would have a chilling effect on the very principles on which [they] were founded." Appellant's Br. at 7. On the contrary, one would hope that it would have a chilling effect on the tactics used by Purdue in this case.

Affirmed.

BAKER, J., and BARNES, J., concur.