**LIBERTY COUNTRY CLUB, Appellant,**

v.

**LANDOWNERS and EACH OF THEM, of the Country Club Estates Housing Development, Liberty, Indiana, Appellee.**

No. 81A01–1007–MI–364.

Court of Appeals of Indiana.

June 10, 2011.

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellant.

James R. Williams, Defur Voran, LLP, Muncie, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Liberty Country Club ("Liberty") filed a complaint for declaratory judgment in Union Circuit Court against the Landowners of the Country Club Estates Housing Development (collectively "the Homeowners") seeking a declaration that under the terms of a covenant applicable to the development, Liberty was not required to expend funds to maintain the purity of the water it provides to the Homeowners. After the parties filed cross-motions for summary judgment, the trial court entered summary judgment in favor of the Homeowners and concluded that under the terms of the covenant, Liberty is required to provide potable water to the Homeowners in the development. Liberty appeals and argues that the trial court erred in interpreting the covenant. After months of unsuccessful appellate mediation ordered by this court, we now review this case on the merits and affirm the trial court in all respects.

### Facts and Procedural History

Liberty is a corporation organized and existing under the laws of the State of Indiana with the primary purpose of operating a golf course. In the early 1970s, Liberty developed and sold lots for residential construction subject to the Protective Covenants for Country Club Estate Housing Development. The covenants were recorded on July 3, 1972. The covenant pertinent to this appeal states:

> The Liberty Country Club agrees to allow lot owners the use of the club's water so long as same is available. The Club assumes no responsibility for the availability of water or purity of the water. As soon as practical, the Club will dedicate the water lines to a municipal or public utility.

Appellant's App. p. 8. Liberty advertised the lots for sale with the promise of free water service to lot owners. As homes have been resold throughout the years, real estate listings have advertised free water service provided by Liberty.

In 2003, tests of Liberty's water supply revealed elevated bacteria levels. Water service to the Homeowners was interrupted while the system was repaired at a cost of over $6000. After Liberty resumed supplying water to the Homeowners, it sent them a letter, which stated in pertinent part:

> We would like to emphasize that the Liberty Country Club shares your concern about the water system. This latest episode prompted us to review the covenants for the Country Club Estates.

For your information, the following article 15, reads "The Liberty Country Club agrees to allow lot owners the use of the club's water so long as same is available. The Club assumes no responsibility for the availability of water or purity of the water. As soon as practical, the Club will dedicate the water lines to a municipal or public utility."

We have every intention of continuing our obligation to you, in providing water at no cost, provided that the costs to maintain the system remain within reason. In the past 5 years the Club has spent well over $6,000 to repair the system. While we have no problem with this, we do share your concern over the continued quality of the water and the reliability of a system that is approaching 30 years of age.

Appellant's App. pp. 46.

In 2004, the Indiana Department of Environmental Management notified Liberty that its water supply was unsafe, and Liberty was ordered to install a water purification system. Liberty installed the system at a cost of over $4000. Liberty has also paid for the water to be treated at a cost in excess of $6000 per year.

On July 31, 2008, Liberty filed a complaint for declaratory judgment requesting that the trial court declare that Liberty has no obligation to provide purified water to the Homeowners. Thereafter, the parties filed cross-motions for summary judgment. A hearing was held on the motions on April 8, 2010.

On July 2, 2010, the trial court granted the Homeowners' motion for summary judgment, and issued the following findings of fact:

3. Protective Covenant 15 allows each lot owner to use the club's water supply "as long as the same is available."

4. [Liberty], pursuant to its aforementioned contractual obligation, has historically provided water to the [Homeowners].

5. [Liberty] has an adequate supply of water available and has stated its intention to continue delivery of water to the [Homeowners].

6. Recent real estate listings and communication from real estate agents selling [Homeowners'] properties have included reference to free water service.

7. Prior owners of the subject real estate relied and communicated to prospective purchasers (specifically the [Homeowners]) that the water service had been and would continue to be free.

8. Other [Homeowners] were told by employees of [Liberty] that water would be provided at no cost.

Appellant's App. pp. 119–20 (record citations omitted). The trial court then concluded:

3. Covenant 15 imposes an affirmative duty on [Liberty] to deliver potable water to the [Homeowners], as long as a supply of water is available.

\*    \*    \*

5. The inclusion of the language in Covenant 15 stating "... [a]s soon as practical, the Club will dedicate the water lines to a municipal or public utility" indicates an original intent of [Liberty] to deliver potable water to the [Homeowners].

6. While admittedly not warranting the overall purity (i.e. taste, color, etc.), the intent of the Covenant is clearly to provide potable water service to the [Homeowners].

7. Each and every [Homeowner] reasonably relied and continues to rely on the Covenant and communications from

the golf courses that water would be provided at no cost.

*Id.* at 121 (record citations omitted).

Accordingly, the trial court declared that Liberty "has an affirmative duty and continuing responsibility to provide potable water to each and every [Homeowner] in the development." *Id.* And the trial court concluded that each Homeowner "reasonably relied on the Covenant and the communications from [Liberty] regarding water service to an extent that the reliance became a basis of the bargain for each [Homeowner] to purchase property in [Liberty's] development." *Id.* at 122.

Liberty filed its notice of appeal in this cause on July 27, 2010. After the appeal was assigned to a three-judge panel, on December 3, 2010, our court ordered the parties to participate in mediation pursuant to Appellate Rule 20. The parties were ordered to commence mediation within thirty days of the date of our order, and to file a status report within thirty days of the commencement of mediation. Liberty failed to file the status report as ordered. Therefore, on February 17, 2011, our court ordered Liberty to file a status report no later than February 27, 2011. Shortly thereafter, Liberty filed a report indicating that the parties had agreed to a mediation date of April 20, 2011. Our court accepted the parties' agreed mediation date. Further, we ordered the Appellant to file a motion to dismiss the appeal due to a mediated settlement no later than April 25, 2011, or if no such motion was filed, the case would proceed to a decision by our court. Because the Appellant did not move to dismiss this appeal, we now proceed to address the Appellant's argument on its merits.

### Standard of Review

We review the grant or denial of summary judgment de novo. *Tri–Etch, Inc. v. Cincinnati Ins. Co.,* 909 N.E.2d 997, 1001

(Ind.2009), *reh'g denied.* In so doing, we stand in the same position as the trial court and must determine whether the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1269–70 (Ind.2009). In making this determination, we construe the evidence in a light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine factual issue against the moving party. *N. Ind. Pub. Serv. Co. v. Bloom,* 847 N.E.2d 175, 180 (Ind.2006). The fact that the parties have filed cross-motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Blasko v. Menard, Inc.,* 831 N.E.2d 271, 273 (Ind.Ct.App.2005), *trans. denied.*

### Discussion and Decision

Liberty argues that the trial court's "interpretation of the covenant renders the language of the covenant under which [Liberty] provides that it assumes no responsibility for the purity of the water meaningless." Appellant's Br. at 4. Liberty argues that under the terms of the covenant it "is obligated to allow the [Homeowners] to use [Liberty's] water so long as it is available, but [Liberty] has no responsibility to purify the water before making it available to the [Homeowners]." *Id.* at 5.

■ "Because covenants are a form of express contract, we apply the same rules of construction; therefore, where the intent of the parties cannot be determined within the four corners of the document, a factual determination is necessary to give effect to the parties' reasonable expecta-

tions." *Howell v. Hawk*, 750 N.E.2d 452, 456 (Ind.Ct.App.2001) (citing *Campbell v. Spade*, 617 N.E.2d 580, 584 (Ind.Ct.App. 1993)). *See also Mayer v. BMR Properties, LLC*, 830 N.E.2d 971, 979 (Ind.Ct. App.2005) ("The covenanting parties' intent must be determined from the specific language used and from the situation of the parties when the covenant was made.").

■ The covenant at issue in this appeal states:

> The Liberty Country Club agrees to allow lot owners the use of the club's water so long as same is available. The Club assumes no responsibility for the availability of water or purity of the water. As soon as practical, the Club will dedicate the water lines to a municipal or public utility.

Appellant's App. p. 8. There is no evidence in the record indicating that Liberty ever dedicated the water lines to a nearby municipal or public utility. Accordingly, Liberty has provided water at its own expense to the Homeowners since the early 1970s.

The trial court determined that the covenant "imposes an affirmative duty on [Liberty] to deliver potable water to [the Homeowners], as long as a supply of water is available." *Id.* at 121. The court concluded that Liberty's intent to deliver "potable" water is established by the language of the covenant stating that Liberty "will dedicate the water lines to a municipal or public utility" as soon as it is practical to do so. *Id.* Further, the court concluded, "[w]hile admittedly not warranting the overall purity (i.e. taste, color, etc.), the intent of the Covenant is clearly to provide potable water service to" the Homeowners. *Id.*

Liberty argues that under the covenant it is obligated to supply water to the Homeowners as long as water is available and the trial court erred when it deter-mined that Liberty must provide "potable water" to the Homeowners. Specifically, Liberty asserts that the first sentence of the covenant makes no reference to water quality, "and the trial court's interpretation ignores the second sentence which provides that [Liberty] assumes no **responsibility** for the availability of water or **purity** of water." Appellant's Br. at 7 (emphasis in original). Ultimately, Liberty claims that the trial court's interpretation renders the second sentence of the covenant meaningless.

To address Liberty's argument, we first observe that the terms potable and pure are not synonymous. Potable means "suitable for drinking." *See* Merriam–Webster Online Dictionary, available at www. merriam-webster.com/dictonary/potable; Oxford English Dictionary Online, available at oed.com/viewdictionaryentry/Entry/148734 (also defining "potable" as "drinkable"). The more restrictive term "pure" is defined as "unmixed with any other matter" and "free from dust, dirt, or taint." *See* Merriam–Webster Online Dictionary available at www.merriam-webster. com/dictionary/pure. Similarly, the Oxford English Dictionary provides the following definitions: "Not mixed or adulterated; clean, clear, refined" and "free from contamination or physical impurity; not mixed with anything that corrupts or impairs; untainted, clean[.]" *See* Oxford English Dictionary Online, available at oed.com/viewdictionaryentry/Entry/154843.

In its motion for summary judgment, Liberty admitted that "[Liberty] wanted to develop a part of its real estate, and offered free water to all who constructed homes thereon." Appellant's App. p. 16. Homes for resale in the development were advertised as having free water service from Liberty. *See e.g.* Appellant's App. pp. 60, 79, 83, 85, 89. When Liberty of-

fered free water service as an incentive to purchase homes in the development, the Homeowners necessarily believed that the offer was for potable water, i.e. water suitable for drinking. Liberty could not have intended otherwise because a free supply of contaminated drinking water simply would not provide any incentive to purchase a home in the development.

Further, Liberty implicitly acknowledged its obligation to provide potable water to the Homeowners in its April 24, 2003 letter, in which Liberty stated: "We have every intention of continuing our obligation to you, in providing water at no cost, providing that the costs to maintain the system remain within reason." Appellant's App. p. 62. The letter discusses Liberty's concern "over the continued quality of the water[.]" *Id.* Liberty also explained to the Homeowners the steps that it had taken to ensure the quality of the water. *Id.* Liberty concluded that it "fully intends to continue providing water as it has done in the past. We just wanted to bring to your attention some of our concerns." *Id.*

Approximately one year later, Liberty installed a water purification system as ordered by IDEM at a cost of over $4000. Liberty also continued to treat the water at its own expense without a request for reimbursement from the Homeowners until 2008.[1]

While the Homeowners did not plead estoppel as an affirmative defense under Trial Rule 8(C), in their response to Liberty's motion for summary judgment, the Homeowners asserted that Liberty had represented to them that "water would be provided free of charge" and that they "relied on such assertions" when deciding whether to reside in County Club Estates. Indeed, Liberty provided free water service to the Homeowners as an inducement to the initial purchase of lots and then for over thirty years thereafter. The Homeowners contend, in effect, that Liberty is estopped by its own course of conduct from relying upon its narrow interpretation of the covenant. *See e.g. Stateman Ins. Co. v. Reibly,* 175 Ind.App. 317, 320, 371 N.E.2d 414, 416 (1978) (stating that an "insurer may embark upon a course of conduct which results in an estoppel to assert the [policy] provision as a defense"). We conclude that this estoppel theory was tried by the implied consent of the parties under Trial Rule 15(B).[2]

The evidence establishes Liberty's intent to provide potable water to the Homeowners when it covenanted that the Homeowners would have "use of the club's water so long as same is available." After Liberty's course of conduct for over thirty years, a time during which it could have taken the necessary steps to connect to a municipal or public utility and during which it enjoyed the benefits of the residential real estate development driven in part by free potable water it provided to the Homeowners, it cannot now rely upon its restrictive interpretation of the covenant at issue. For all of these reasons, we conclude that the trial court properly granted the Homeowners' motion for summary judgment.

Affirmed.

BAKER, J., and NAJAM, J., concur.

---

1. There is no evidence in the record before us that would lead us to conclude that Liberty made a formal request for reimbursement for water treatment costs prior to 2008.

2. Liberty filed a response to the Homeowners' response to Liberty's motion for summary judgment, but did not argue that the Homeowners' had waived the estoppel defense.