# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**PETER A. VELDE**
Kightlinger & Gray, LLP
Indianapolis, Indiana

**CRYSTAL G. ROWE**
Kightlinger & Gray LLP
New Albany, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY E. STRATMAN**
Aurora, Indiana



**FILED**

Mar 29 2012, 9:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DELAGE LANDEN FINANCIAL          )
SERVICES, INC.,                  )
                                 )
   Appellant-Plaintiff,         )
                                 )
      vs.                   )   No.  15A05-1107-CC-366
                                 )
COMMUNITY MENTAL HEALTH          )
CENTER, INC.,                    )
                                 )
   Appellee-Defendant.          )

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Jonathan N. Cleary, Judge
Cause No. 15D01-1012-CC-388

**March 29, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

DeLage Landen Financial Services ("DLL") filed a complaint for breach of contract against Community Mental Health Center, Inc. ("CMHC"), and subsequently sought summary judgment in its favor. DLL appeals the trial court's denial of its motions to strike CMHC's response to DLL's motion for summary judgment and the trial court's denial of its motion for summary judgment. Concluding the trial court abused its discretion in considering CMHC's late-filed response on summary judgment and that, considering only the properly designated evidence, summary judgment should be granted to DLL, we reverse and remand.

## Facts and Procedural History

CMHC leased seven copy machines and related accessories pursuant to a written lease agreement with Pitney Bowes Credit Corporation ("Pitney Bowes"). On December 6, 2010, DLL, as assignee-lessor, filed a complaint against CMHC seeking contract damages and other relief. CMHC filed an answer and asserted certain affirmative defenses.

On March 15, 2011, DLL filed a motion for summary judgment and designation of evidence. Pursuant to Trial Rule 56(C), CMHC had thirty days – or until April 18, 2011 including the three-day extension for service by mail[1] – to file a response. On April 15, 2011, the trial court set DLL's motion for a hearing on May 27, 2011. On May 27, 2011, CMHC filed a motion to continue the hearing, alleging counsel had a family emergency. That motion was granted. Also on May 27, 2011, CMHC filed a Motion for Enlargement of

---

[1] See Ind. Trial Rule 6(E).

2

Time to File Response to Motion for Summary Judgment, simultaneously filing the Response. In the Motion for Enlargement of Time, CMHC's counsel relied on Trial Rule 6(B)(2), allowing a trial court to permit an act to be done upon motion made after the expiration of the time period for doing so if the failure to act was the result of excusable neglect. CMHC's counsel stated that he had an inexperienced scheduling secretary who did not properly calendar the due date for the Response, and that he did not notice the failure to file a response until he reviewed his calendar for the week of May 27, 2011, and discovered the summary judgment hearing. DLL objected to the enlargement of time, citing the Indiana Supreme Court case of HomEq Servicing Corp. v. Baker, 883 N.E.2d 95, 98-99 (Ind. 2008), in support of the proposition that because CMHC failed to respond to the summary judgment motion in any way within thirty days of its filing the trial court could not consider any filings made thereafter. On June 3, 2011, the trial court denied the Motion for Enlargement of Time.

Following the trial court's order denying CMHC an enlargement of time to respond to the motion for summary judgment, DLL filed a motion to strike CMHC's response to summary judgment as untimely and CMHC requested Trial Rule 60(B) relief from the trial court's June 3, 2011, order. On June 24, 2011, the trial court denied DLL's motion to strike, allowing CMHC's response to stand and therefore, effectively granting CMHC's requested Trial Rule 60(B) relief. DLL filed a motion to reconsider the trial court's June 24, 2011, order. The trial court vacated its June 24, 2011, order and set DLL's motion to reconsider for a hearing. Following the hearing, the trial court denied DLL's motion to strike CMHC's

response to summary judgment, granted CMHC permission to file its belated response, and denied DLL's motion for summary judgment:

> Plaintiff, [DLL], having filed its Motion for Summary Judgment and the Court, having considered said motion and being duly advised in the premises, hereby denies the same.
> The Court further vacates the June 24, 2011 Order denying [DLL's] Strike Motion, however the court now reinstates said order after having held a full hearing on said issue on July 8, 2011. Further the Court grants [CMHC] permission to file the summary judgment response pleadings which were filed on or about June 6, 2011.

Appellant's Appendix at 7. DLL now appeals. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Motion for Relief from Judgment

DLL first contends the trial court erred in granting CMHC's Rule 60(B) motion for relief from the June 3, 2011, order denying an enlargement of time to file its summary judgment response and allowing CMHC to file a belated response to summary judgment.

### A. Standard of Review

Indiana Trial Rule 60(B) provides:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:
> (1) mistake, surprise, or excusable neglect . . . .
> * * *
> . . . A movant filing a motion for reason[ ] (1) . . . must allege a meritorious claim or defense.

The burden is on the movant for relief from judgment to demonstrate that the relief is both necessary and just. In re Paternity of M.W., 949 N.E.2d 839, 842 (Ind. Ct. App. 2011). Trial

4

Rule 60(B) "affords relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant." Goldsmith v. Jones, 761 N.E.2d 471, 474 (Ind. Ct. App. 2002).

Our review of a trial court's grant or denial of a motion for relief from judgment pursuant to Trial Rule 60(B) is limited to determining whether the trial court committed an abuse of discretion. Citimortgage, Inc. v. Barabas, 950 N.E.2d 12, 15 (Ind. Ct. App. 2011). A trial court abuses its discretion when its ruling is clearly against the logic and effect of the facts and circumstances before the court. TacCo Falcon Point, Inc. v. Atlantic Ltd. P'ship XII, 937 N.E.2d 1212, 1218 (Ind. Ct. App. 2010).

## B. Relief from Judgment

The propriety of the trial court's grant of relief from judgment ultimately relates back to whether the trial court should consider CMHC's response to DLL's motion for summary judgment. Trial Rule 56 states, in pertinent part:

> (C) The motion and any supporting affidavits shall be served in accordance with the provisions of Rule 5. An adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits. . . .
> * * *
> (F) Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
> * * *
> (I) For cause found, the Court may alter any time limit set forth in this rule upon motion made within the applicable time limit.

5

In Seufert v. RWB Med. Income Props. I Ltd. P'ship, 649 N.E.2d 1070, 1073 (Ind. Ct. App. 1995), this court held that a trial court has discretion to order a continuance pursuant to Trial Rule 56(F) or alter time limits pursuant to Trial Rule 56(I) only where the non-movant has responded or sought an extension of time in which to respond within thirty days of the motion for summary judgment being filed. In Desai v. Croy, 805 N.E.2d 844 (Ind. Ct. App. 2004), trans. denied, this court noted that our cases had consistently followed the Seufert rule until Farm Credit Servs. v. Tucker, 792 N.E.2d 565 (Ind. Ct. App. 2003), in which this court held the trial court had discretion under Trial Rule 56(I) to consider the non-movant's designated evidence even when the non-movant had failed to respond within thirty days. Id. at 848-49 (citing Farm Credit Serv., 792 N.E.2d at 569-70). Nonetheless, Desai followed Seufert and again held that "a trial court may exercise discretion and alter time limits under 56(I) only if the nonmoving party has responded or sought an extension within thirty days from the date the moving party filed for summary judgment." 805 N.E.2d at 850.

In HomEq, our supreme court considered whether the trial court erred in declining to consider the non-movants' joint affidavit in opposition to summary judgment, filed over one year after the motion for summary judgment. The non-movants argued on appeal that the trial court has discretion to consider late-filed responses and should have done so in this case. Our supreme court acknowledged the then-recent inconsistent authority, but characterized the Desai decision as providing a bright line rule precluding late filing. Id. at 98. The court also stated that "[a]ny residual uncertainty was resolved . . . when we cited Desai with

6

approval" in a 2005 case. Id. (citing Borsuk v. Town of St. John, 820 N.E.2d 118 (Ind. 2005)). In Borsuk, the court stated:

> When a nonmoving party fails to respond to a motion for summary judgment within 30 days by either filing a response, requesting a continuance under Trial Rule 56(I), or filing an affidavit under Trial Rule 56(F), the trial court cannot consider summary judgment filings of that party subsequent to the 30-day period.

820 N.E.2d at 124 n.5. Pursuant to this authority, DLL argues the trial court had no discretion to grant relief and allow the consideration of CMHC's late-filed response.

CMHC contends that HomeEq can be distinguished by its facts and procedural history. In HomeEq, the plaintiff filed a motion for summary judgment on April 15, 2004. Although the defendants sought a series of continuances of the summary judgment hearing, at no time within thirty days after service of the motion for summary judgment did they request alteration of the time limits imposed by Trial Rule 56. A summary judgment hearing was ultimately held on May 9, 2005, on which date the defendants filed a joint affidavit in opposition to summary judgment. The trial court declined to consider the affidavit and granted the plaintiff's motion for summary judgment. Our supreme court concluded, based on the rule discussed above, that the trial court did not err in refusing to consider the affidavit and affirmed the grant of summary judgment. HomeEq, 883 N.E.2d at 99.

CMHC distinguishes this case from HomeEq by noting first, the non-movant in HomeEq never requested an enlargement of time under the Indiana Trial Rules whereas CMHC requested an enlargement of time pursuant to Trial Rule 6(B)(2), and second, the affidavit in HomeEq was filed thirteen months after the motion for summary judgment (and

one year after a response was due) whereas CMHC's materials were submitted approximately two months after DLL's motion for summary judgment (or slightly over one month after they were due).

As to CMHC's reliance on its request for an enlargement of time to distinguish this case from HomeEq, Trial Rule 6(B)(2) provides:

When an act is required or allowed to be done at or within a specific time by these rules, the court may at any time for cause shown:
(1) order the period enlarged, with or without motion or notice, if request therefor is made before the expiration of the period originally prescribed or extended by a previous order; or
(2) upon motion made after the expiration of the specific period, permit the act to be done where the failure to act was the result of excusable neglect; but, the court may not extend the time for taking any action for judgment on the evidence under Rule 50(A), amendment of findings and judgment under Rule 52(B), to correct errors under Rule 59(C), statement in opposition to motion to correct error under Rule 59(E), or to obtain relief from final judgment under Rule 60(B), except to the extent and under the conditions stated in those rules.

CMHC argues that, despite the holding in HomeEq with respect to Trial Rule 56, Trial Rule 6(B)(2) "on its face allows the trial court discretion to allow an enlargement of time as long as the court finds excusable neglect . . . ." Brief of Appellee at 24. CMHC notes that Trial Rule 56(I) restates Trial Rule 6(B)(1), and that because Trial Rule 56 is not one of the rules specifically exempted from the operation of Trial Rule 6(B)(2), an enlargement of time is allowed.

When trial rules conflict, we apply the principles of statutory construction under which rules are to be construed together and in harmony when possible. Carter-McMahon v. McMahon, 815 N.E.2d 170, 175 (Ind. Ct. App. 2004). Thus, when two rules cover the same

subject matter and one does so generally where the other does so specifically, the more specific rule prevails. Daugherty v. Robinson Farms, Inc., 858 N.E.2d 192, 197 (Ind. Ct. App. 2006), trans. denied. The parties disagree over which rule – Trial Rule 6 or Trial Rule 56 – is more specific. We recognize, as CMHC has pointed out, that Trial Rule 56 is not one of the rules Trial Rule 6(B)(2) specifically exempts from its operation. However, none of the rules that are specifically exempted from Trial Rule 6(B)(2) have their own enlargement of time provision and would thus be subject to Trial Rule 6(B)(2) without the exemption. Because Trial Rule 56 has its own enlargement of time provision, which applies only to Trial Rule 56 and is therefore the more specific of the two rules, it does not need to be exempted from Trial Rule 6(B)(2) because it is not subject to Trial Rule 6(B)(2) in the first instance. Thus, the fact that CMHC filed a motion for enlargement of time pursuant to Trial Rule 6(B)(2) and the non-movant in HomeEq did not is not a pertinent distinction because Trial Rule 6(B)(2) does not apply to summary judgment materials.

CMHC also points out that the non-movant in HomeEq tried to file its response one year after it was due, whereas CMHC attempted to file its response only approximately one month after it was due. Given that the rule announced in HomeEq is not a substantial compliance rule, the length of time that passes between the date a response to a motion for summary judgment is due and the date a response is filed is immaterial. In Thayer v. Gohil, 740 N.E.2d 1266 (Ind. Ct. App. 2001), trans. denied, the non-movant timely requested and was granted two extensions of time to respond to a motion for summary judgment. The second extension allowed her until November 29, 1999, to file her response. The non-

9

movant filed her response and accompanying affidavits on December 1, 1999, and also filed a motion for leave to file her response belatedly, alleging she had good cause for not meeting the deadline. The trial court ultimately struck her response and granted summary judgment to the movant. On appeal, we held the non-movant's failure to show cause for alteration of time before the November 29, 1999, deadline "must result in a striking of her untimely response." Id. at 1268. In so holding, we specifically noted that the non-movant, filing her response only two days after the deadline, had come "closer to complying with T.R. 56" than in other cases reaching the same result. Id. Nonetheless, "it is essential that the non[-]movant timely comply with the dictates of T.R. 56." Id.; see also Borsuk, 820 N.E.2d at 124 n.5 (noting that because non-movant filed affidavit two months after motion for summary judgment was filed without requesting relief within thirty day period allowed to respond, trial court should not have admitted the affidavit); Desai, 805 N.E.2d at 850 (non-movant failed to respond to motion for summary judgment for approximately three and one-half months and trial court therefore erred in allowing non-movant to file opposing affidavits at that time); Seufert, 649 N.E.2d at 1073 (non-movant failed to respond to motion for summary judgment in the three months between its filing and a hearing thereon and trial court therefore appropriately found there was no evidence raising an issue of fact and properly granted summary judgment).

Because CMHC failed to file a response or request an extension within the prescribed time, the trial court had no discretion to alter the time limits in Trial Rule 56. CMHC's belated response should have been stricken and the trial court abused its discretion when it

granted CMHC relief from its earlier judgment and allowed CMHC's response to be filed and considered on summary judgment.

## II. Summary Judgment

DLL also contends the trial court erred in denying its motion for summary judgment. We review a trial court's decision to grant or deny summary judgment de novo, standing in the same position as the trial court and considering only the properly designated evidence in evaluating the summary judgment motion. Liberty Country Club v. Landowners, 950 N.E.2d 754, 757 (Ind. Ct. App. 2011). A party seeking summary judgment has the burden to make a prima facie showing through its designated evidence that there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. Coffman v. PSI Energy, Inc., 815 N.E.2d 522, 526 (Ind. Ct. App. 2004), trans. denied. The non-moving party may not then rest on the allegations of its pleadings to demonstrate the existence of a genuine issue for trial, but must designate specific facts so showing. Id. The court must accept as true those facts alleged by the non-moving party, construe the evidence in favor of the non-movant, and resolve all doubts against the moving party. Id. This means, however, that "only those facts alleged by the respondent/nonmovant and supported by affidavit or other evidence 'must be taken as true.'" McDonald v. Lattire, 844 N.E.2d 206, 212 (Ind. Ct. App. 2006). We have determined the trial court erred when it allowed CMHC to respond and designate evidence in opposition to DLL's motion. Accordingly, we will look only to the evidence designated by DLL in reviewing the trial court's denial of summary judgment.

11

DLL sued CMHC for monthly rental payments due and not paid, for possession of the equipment, and for attorney fees. On summary judgment, DLL designated CMHC's answer to DLL's complaint, and the affidavits of Charles McAllister, a DLL employee, and Peter Velde, DLL's attorney. In its answer, CMHC admitted that in 2005, it entered into a lease and maintenance agreement with Pitney Bowes, agreeing to make monthly rental payments for the lease of certain equipment. CMHC also asserted as affirmative defenses that Pitney Bowes breached the lease and that CMHC had terminated the lease prior to the time it ceased making payments.

McAllister avers in his affidavit that he has been a Litigation Recovery Specialist at DLL since 2008 and that he has personal knowledge of the facts asserted therein. He further avers that:

> 5. Pursuant to the terms of the Lease, CMHC agreed to lease seven (7) IM3511 copy machines and related accessories from Pitney (collectively referred to as the "Equipment"). In exchange for the Equipment, CMHC agreed to pay $1,933.00 per month to Pitney for sixty (60) consecutive months.
> 6. Shortly after CMHC's execution of the Lease and Maintenance Agreement, Pitney assigned and sold all of its rights, title and interest in and to the Lease to DLL.
> 7. In February 2009, CMHC discontinued paying the monthly rent required to be paid pursuant to the terms of the Lease.
> 8. CMHC is currently in default under the terms of the Lease.
> 9. Under the Lease, CMHC agreed to pay a late payment fee on any untimely monthly payments along with all costs, expenses and attorney fees incurred by DLL in enforcing the terms of the Lease. . . .
>      * * *
> 13. The Lease entitles DLL to the possession of the Equipment leased by CMHC upon CMHC's default and allows DLL to dispose of the Equipment by sale. . . .
> 14. The Lease is unconditional and absolute and cannot be terminated by CMHC. . . .

12

Appellant's App. at 21-22. Attached as exhibits to McAllister's affidavit are copies of the lease and maintenance agreement, seven statements of account, and the written demand letter from DLL to CMHC for payment. The lease shows that CMHC is to lease equipment described as seven model "IM3511" copiers and accessories described as "1-4510, 3-3510, 9-DL185, and 5-DL250," and make sixty monthly payments of $1,933. Id. at 26. The "terms and conditions" of the lease provide:

> this lease cannot be cancelled or terminated for any reason, all payments under this lease [ ] unconditional and absolute and you shall pay them regardless of whether the equipment is damaged, destroy[ ], defective, unusable or becomes obsolete, and regardless of any dispute with, or claims against, [Pitney Bowes], vendor or any other party. Your o[ ]gations under this lease are not subject to defense, setoff, counterclaim, abatement, or reduction for any reason.

Appellant's App. at 26.[2] "All Payments due under this Lease shall be payable only to [Pitney Bowes] at . . . Louisville, KY . . . until we direct you otherwise in writing." Id. at 27. The lease also allows Pitney Bowes to "sell, assign or transfer all or any part of this Lease and/or the Equipment. The new owner will have the same rights that we have . . . . You also agree and acknowledge that any Assignment by us will not materially change your obligations hereunder." Id. The seven statements of account for equipment of type "IM 3510" with various serial numbers each show a date of last payment of February 27, 2009, and various amounts due, totaling $53,185.08. Id. at 30-36. Velde avers in his affidavit, supported by a billing information memo, that DLL has incurred or will incur attorney fees of $7,000 in pursuing this action.

---

[2] The copy of the lease included in the Appellant's Appendix is cut off along the right margin and is not entirely legible. The omissions in this quote reflect only what is actually shown on the copy.

DLL asserts this designated evidence – as we have determined above, the only properly-designated evidence to be considered – shows there are no genuine issues of material fact and it is entitled to summary judgment as a matter of law, in the form of a judgment for the outstanding balance, attorney fees, and an order for possession of the equipment. CMHC contends that even considering only DLL's evidence, there remain questions of fact precluding summary judgment.

CMHC first argues that the lease was between it and Pitney Bowes, and although the lease provides Pitney Bowes can assign its rights, the only designated evidence indicating Pitney Bowes had in fact assigned its rights to DLL is the "vague assertion" in McAllister's affidavit that the lease had been assigned. Brief of Appellee at 16. Trial Rule 56(E) provides, in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Mere assertions in an affidavit of conclusions of law or opinions will not suffice. City of Indianapolis v. Duffitt, 929 N.E.2d 231, 239 (Ind. Ct. App. 2010). "An affidavit need not contain an explicit recital of personal knowledge when it can be reasonably inferred from its contents that the material parts thereof are within the affiant's personal knowledge." Decker v. Zengler, 883 N.E.2d 839, 844 (Ind. Ct. App. 2008), trans. denied. However, CMHC cannot meet its burden of showing a genuine issue of material fact for trial simply by attempting to discredit McAllister's affidavit on appeal. McAllister's affidavit includes a specific recitation that he has personal knowledge of the facts related therein. That he is

14

familiar with the CMHC lease and the corresponding accounts can also be inferred from his position with DLL as a Litigation Recovery Specialist. See, e.g., Skaggs v. Merchants Retail Credit Ass'n, Inc., 519 N.E.2d 202, 203 (Ind. Ct. App. 1988) (averments that affiant was employed by phone company and responsible for customer billing and collections sufficient to conclude recital of payments and credits made by phone service customer were based on personal knowledge).  This is all that is required by Trial Rule 56(E).

CMHC admitted in its answer – which was designated by DLL as evidence in support of its motion for summary judgment – that it entered into the lease and was obligated to make monthly rental payments.  CMHC has designated no evidence to refute McAllister's affidavit stating that an assignment of the lease was made from Pitney Bowes to DLL or that CMHC stopped making payments thereon.  And CMHC has designated no evidence supporting its affirmative defenses of breach or termination of the lease excusing lack of payment.

McAllister's affidavit, together with CMHC's answer, is sufficient to make a prima facie showing that DLL, as Pitney Bowes assignee, has a lease agreement with CMHC, that CMHC has failed to make the rental payments it was obligated pursuant to the lease to make, and that pursuant to the lease DLL is entitled to past due rent amounts, possession of the equipment, costs and fees.

CMHC also argues that the statements of account that purport to show the balance CMHC allegedly owes DLL are not linked to and in fact contradict the lease.  CMHC points out that the lease is for seven model "IM 3511" copiers, but the statements of account are for model "IM 3510" copiers and two of the statements of account show the same serial number.

15

These discrepancies were not designated as specific facts precluding summary judgment, and even if they had been, do not rise to the level of a genuine issue of material fact when it is undisputed that CMHC leased seven copiers and owed monthly rent thereon. McAllister averred that CMHC owed DLL $53,185.08 for the rental of the equipment, specifically incorporating the statements of account "for each copy machine leased by CMHC pursuant to the Lease." Appellant's App. at 22. In short, DLL alleged there was no issue of material fact, designating evidence making a prima facie case that it was entitled to judgment as a matter of law, and CMHC has failed to meet its burden of demonstrating an issue of fact. DLL was entitled to entry of summary judgment in its favor.[3]

## Conclusion

The trial court abused its discretion in considering CMHC's late-filed response to DLL's motion for summary judgment, and considering only the properly designated evidence, the trial court erred in denying summary judgment to DLL. The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

NAJAM, J., and VAIDIK, J., concur.

---

[3] DLL alleges it is entitled, under the terms of the lease, to appellate attorney fees. In entering summary judgment for DLL on remand, the trial court should determine a reasonable fee to which DLL is entitled under the lease, including those for pursuing this successful appeal. Accordingly, we need not address DLL's claim that it is also entitled to appellate attorney fees pursuant to Indiana Appellate Rule 66(E).