**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**VINCENT M. CAMPITI**
Nemeth, Feeney, Masters & Campiti, P.C.
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY L. SANFORD**
Deputy City Attorney
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AGAV PROPERTIES, AVROHEM TKATCH, and ELISHEVA TKATCH | ) | |
| | ) | |
| Apellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1308-PL-396 |
| | ) | |
| THE CITY OF SOUTH BEND, and THE SOUTH BEND FIRE DEPARTMENT | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch
Cause No. 71C01-1204-PL-81

**May 23, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

AGAV Properties, Inc., d/b/a AGAV Properties ("AGAV"), Avrohem Tkatch ("Avrohem"),[1] and Elisheva Tkatch ("Elisheva") (collectively, "the Plaintiffs") appeal the St. Joseph Circuit Court's grant of a motion to dismiss and motion for summary judgment filed by City of South Bend and the South Bend Fire Department (collectively "the City"). On appeal, the Plaintiffs present three issues, which we restate as: (1) whether genuine issues of material fact existed that would preclude summary judgment; (2) whether the Plaintiffs were denied due process because the City acted without giving Plaintiffs proper notice; and (3) whether the trial court erred in failing to address Avrohem's individual claim that the City violated his rights under the Indiana Constitution.

We affirm.

## Facts and Procedural History

At the time relevant to this appeal, AGAV owned an apartment complex on Colfax Street in South Bend, Indiana (the "Colfax Apartments"). According to the Plaintiffs' complaint, both Avrohem and Elisheva are the owners of AGAV.[2] On May 27, 2011, Captain Johnny Fleming ("Captain Fleming") was working for the South Bend Fire Department in the Protection/Inspection Bureau when he inspected the Colfax Apartments. During his inspection, Captain Fleming noticed and recorded several violations of the building and fire codes, including non-working smoke detectors, missing

---

[1] The Plaintiffs' trial court pleadings indicate that Mr. Tkatch's first name is spelled "Avrohom," but on appeal, the Plaintiff's brief spells Mr. Tkatch's name "Avrohem." For purposes of consistency, we use the spelling "Avrohem."

[2] The designated evidence indicates only that Avrohem is a principal of AGAV, without explaining Elisheva's connection to AGAV.

smoke detectors, lack of emergency lighting, lack of exit signs, and electrical hazards. On June 6, 2011, AGAV was given notice of the violations Captain Fleming had found and told that a hearing officer had determined that the property needed to be "vacated and sealed." Appellant's App. p. 16. The notices included a scheduled reinspection date of June 17, 2011. Id. at 24. Captain Fleming personally met with Avrohem on June 6 and informed of the inspection and the violations found. Although qualified to generally inspect the premises for fire hazards,[3] there is no indication that Captain Fleming is or was at the time an electrical inspector.

The Plaintiffs claim that Avrohem informed Captain Fleming at that time that he would be gone for the "following several days for Jewish holiday."[4] Appellant's Br. p. 2. Two days later, on June 8, and before the scheduled reinspection date of June 17, Captain Fleming and Rick Spitaels ("Inspector Spitaels"), an electrical inspector for the City returned to the Colfax Apartments to conduct another inspection. Inspector Spitaels identified several serious safety violations, including electric meter sockets that had exposed, live electrical wires, electrical wires in disrepair, and rusted electrical service equipment. Inspector Spitaels determined that these conditions presented a fire hazard and a safety hazard. Inspector Spitaels informed Captain Fleming of these violations, and Captain Fleming decided to disconnect the electrical service to the apartment buildings as

---

[3] Captain Fleming averred in his affidavit that he had been "fully educated and trained in the area of building inspection and city code violation, including fire protection and fire hazards." Appellant's App. p. 15.

[4] The Plaintiffs filed no affidavits in opposition to the City's motion for summary judgment, and in support of this statement refers only to their Notice of Tort Claim. However, a non-moving party may not then rest on the allegations of its pleadings to demonstrate the existence of a genuine issue of fact. DeLage Landen Fin. Servs., Inc. v. Cmty. Mental Health Ctr., Inc., 965 N.E.2d 693, 699 (Ind. Ct. App. 2012), trans. denied.

a safety precaution. Captain Fleming also informed the residents of the apartments that the service was being disconnected, as was his custom.

On June 30, 2011, the Plaintiffs, represented by counsel, appeared at a hearing regarding the June 6 vacate and seal order. The Plaintiffs requested additional time to repair the hazards. The hearing member gave the Plaintiffs until August 1, 2011 to complete the repairs, but affirmed the order to vacate and seal the Colfax Apartments. Despite this extension of time, the Plaintiffs did not complete the repairs or pass further inspections. In fact, according to the order of the St. Joseph Superior Court granting the City's request for a preliminary injunction, the Plaintiffs did not vacate and seal the Colfax Apartments until the City filed for a preliminary injunction. Ultimately, all of the tenants vacated the apartment complex.

Approximately five months later, on November 30, 2011, AGAV and Avrohem, but not Elisheva, filed a Notice of Tort Claim with the City of South Bend, the Indiana Political Subdivision Risk Management Commission, and the Governor of Indiana. Just over four months after that, on April 18, 2012, AGAV, Avrohem, and Elisheva filed a four-count complaint against the City of South Bend and the South Bend Fire Department, alleging negligence, intentional interference with a contractual relationship, and violation of state and federal constitutional rights. The case was removed to the U.S. District Court for the Northern District of Indiana on May 2, 2012, but the case was ultimately remanded back to St. Joseph Circuit Court after the Plaintiffs amended their complaint to remove federal constitutional claims.

On November 8, 2012, the City filed a motion to dismiss and motion for summary judgment along with designated evidence and affidavits in support of their motion. After receiving extensions of time to file their response, the Plaintiffs filed a response to the City's motions on January 11, 2013. The Plaintiffs did not provide a separate designation of evidence, but did include in their response two exhibits: a copy of their Notice of Tort Claim, and a copy of the June 6, 2011 Order to Comply and Notice of Continuous Enforcement Hearing. They did not, however, file any affidavits opposing the affidavit's designated by the City. On July 8, 2013, the trial court issued an order granting the City's motion to dismiss vis-à-vis Elisheva because the Notice of Tort Claim did not list Elisheva as a claimaint, but denied the motion to dismiss with regard to Avrohem and AGAV. The trial court's order also granted summary judgment in favor of the City, concluding that the City and its Fire Department were immune from suit under the Indiana Tort Claims Act. The Plaintiffs now appeal.

## Summary Judgment Standard of Review

On appeal, the Plaintiffs claim that the trial court erred in granting summary judgment in favor of the City. Our standard of review of summary judgment appeals is well established: when reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269 (Ind. 2009). Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Id. at 1269-70 (citing Ind. Trial Rule 56(C)). In answering these questions, the reviewing court

5

construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. Id. at 1270.

The moving party bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. Id. Although we are limited to reviewing only the evidence designated before the trial court, we are not constrained to the claims and arguments presented at trial nor the rationale of the trial court ruling. Manley v. Sherer, 992 N.E.2d 670, 673 (Ind. 2013). Instead, we may affirm a grant of summary judgment on any theory supported by the designated evidence. Id. The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark County Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009).[5]

---

[5]    We also note that the appellant bears the burden of presenting a complete record with respect to the issues raised on appeal. Finke v. N. Ind. Pub. Serv. Co., 862 N.E.2d 266, 272 (Ind. Ct. App. 2006). Where the appellant fails to present a complete record, we have no basis to reevaluate the trial court's conclusion. Id. Simply put, we cannot review a claim that a trial court erred in granting a motion for summary judgment when the appellant does not include in the record all the evidence designated to the trial court and before it when it made its decision. Id. at 272-73.

In the materials presented to us in the present appeal, it is not clear whether all of the materials presented to the trial court are included in the record before us. In their appendix, the Plaintiffs did not include the City's motion to dismiss and for summary judgment, nor did they include the City's designation of evidence. Although the Plaintiffs did present two affidavits that were presumably relied upon by the City, there is no separate designation of evidence or memorandum in support of summary judgment by the City which would support this presumption. Thus, we would be within our discretion to conclude that the Plaintiffs, as the appealing parties, failed to present us with a record sufficient to conclude that the trial court erred in granting summary judgment to the City. See Finke, 862 N.E.2d at 273 (affirming trial court's grant of summary judgment when appellant failed to include in materials presented to the court on appeal all the evidence designated to the trial court). Still, we prefer to decide

## I. Genuine Issues of Material Fact Regarding Safety Hazards

The Plaintiffs first claim that the trial court erred in concluding that there was no genuine issue of material fact with regard to whether there was an immediate safety and fire hazard at the Colfax Apartments. They claim that nowhere in the affidavits provided by the City did the affiants say that such an immediate safety and fire hazard existed. However, the materials submitted by the City noted the safety and fire hazards, which included exposed live wires, and stated that the electrical service was therefore disconnected. As the Plaintiffs presented no evidence to contradict this, we cannot say that the trial court erred in concluding that there was no genuine issue of material fact with regard to the immediacy of the fire and safety hazard presented by live, exposed electrical wires at the Colfax Apartments.

The Plaintiffs also claim that the hazards that were found during the June 8 inspection were the same ones that existed during the initial May 27 inspection, yet the first inspection did not indicate any immediate emergency; instead, they claim the City gave the Plaintiffs until June 17 to address the issues. It is true that the hazards found on June 8 appear to be mostly duplicative of the ones found on May 27. However, based on the initial inspections, the City ordered AGAV on June 6 to "vacate and seal" the Colfax Apartments. As Captain Fleming stated in his affidavit, "Vacated and sealed means that each violating building had to have all people residing in the building removed and then the building had to be secured so that no other person could enter the building." Appellant's App. p. 16. The violations notices given to the Plaintiffs by the City ordered

---

cases on their merits, if possible. <u>Omni Ins. Group v. Poage</u>, 966 N.E.2d 750, 753 (Ind. Ct. App. 2012). We therefore address the Plaintiffs' claims based upon the record before us.

the hazards to be corrected "immediately," with a scheduled inspection date of June 17. More importantly, the Plaintiffs appeared at a June 30 hearing and requested additional time to remedy the hazards. The hearing officer gave the Plaintiffs until August 1 to complete repairs, and yet the Plaintiffs still did not repair the hazards or pass an inspection. In fact, according to the order of the St. Joseph Superior court granting the City's request for a preliminary injunction, the Plaintiffs did not vacate and seal the Colfax Apartments until the City filed for a preliminary injunction.

Simply put, we fail to see how the Plaintiffs were harmed by the fact that many of the hazards found in the two inspections were the same. The same is true with regard to the reinspection date; we fail to see how the Plaintiffs were harmed by the fact that the City reinspected the Colfax Apartments before scheduled date because the repairs were not completed even by an extended repair date. And to the extent that the Plaintiffs claim that the City's act of disconnecting the power forced their tenants from the property, they overlook the fact that the initial June 6 order required them to vacate and seal the property; yet again, the Plaintiffs failed to do so until much later.

## II. Due Process Claims

The Plaintiffs also claim that the City improperly denied them due process by disconnecting the electrical service from the Colfax Apartments without proper notice. The Plaintiffs argue that, pursuant to South Bend City Electrical Code, the building owner must be given seventy-two hours notice before electrical services is disconnected, and if an emergency situation exists requiring immediate disconnection, the inspector must apply to the City Building Commissioner for such authority.

8

The Plaintiffs cite to no authority for their claim that their due process rights were denied, nor do they even set forth any applicable due process case law. Instead, they summarily claim that the City's failure to strictly abide by the notice provisions denied them due process of law. Accordingly, we consider any due process argument to be waived. See Jeffrey v. Methodist Hospitals, 956 N.E.2d 151, 159 (Ind. Ct. App. 2011) (citing Appellate Rule 46(A)(8)(a)) (observing that failure to support a position with any citation to authority or cogent argument results in waiver of the issue for purposes of appeal).

Waiver notwithstanding, the Plaintiffs still would not prevail. At best, the Plaintiffs established that the City failed to strictly follow the procedures set forth in Section 6-21 of the South Bend Electrical Code, which provides in relevant part:

Electrical Inspector

\* \* \*

(b) *Authority to discontinue use.* Upon finding that any electrical equipment is dangerous to persons or property because it is defective or defectively installed, the Electrical Inspector has the authority to order, in writing, the person responsible for the electrical equipment to make changes or repairs necessary to place the equipment in safe condition in compliance with this chapter. If the person responsible does not comply with the order within seventy-two (72) hours from the service of the order, the Electrical Inspector shall have the authority to disconnect or order the discontinuance of electrical service to such electrical equipment.

(c) *Authority to disconnect electrical equipment.* Upon the approval of the Building Commissioner, the Electrical Inspector has the authority to disconnect or cause the disconnection of any electrical equipment immediately upon his determination that such immediate disconnection is necessary for safety to persons or property.

The Plaintiffs claim that Captain Fleming failed to give them seventy-two hours notice or obtain the approval of the Building Commissioner before disconnecting the

electrical service to the Colfax Apartments. In this regard, the Plaintiffs appear to be correct; at the very least, the City did not establish that Captain Fleming obtained the approval of the Building Commissioner prior to disconnecting the electrical service to the Colfax Apartments. The Plaintiffs do not explain, however, how this apparent failure to abide by the Electrical Code prejudiced them or deprived them of due process. Indeed, we note that the Plaintiffs, represented by counsel, appeared before a hearing officer on June 30, 2011, which affirmed the order to vacate and seal and extended the deadline for repairs to August 1, 2011. And by the August 1 deadline, the Plaintiffs still had not repaired or corrected the hazards, nor did they vacate and seal the Colfax Apartments until the City filed a cause of action for a preliminary injunction and obtained the preliminary injunction it sought. Under these facts and circumstances, we cannot say that the Plaintiffs have demonstrated any genuine issue of material fact with regard to whether they were denied due process.

### III. Individual Constitutional Claims

The Plaintiffs also briefly claim that the trial court failed to address Avrohem's claim that his individual religious rights under the Indiana Constitution were violated. As noted above, Avrohem claims that he told Captain Fleming that he would be on a religious holiday from June 6, 2011 and for several days thereafter, but that Captain Fleming returned with Inspector Spitaels on June 8 knowing that Avrohem would be gone on a religious holiday. On appeal, the Plaintiffs claim that the trial court only addressed this issue with regard to AGAV Properties' claim and ignored Avrohem's personal claims. We disagree.

10

First, the Plaintiffs acknowledge that the trial court did in fact conclude that the City was immune from the Plaintiffs' claims. Because the trial court concluded that the City was immune from the Plaintiffs' claims, it was unnecessary for the trial court to specifically address Avrohem's individual claims. And the Plaintiffs present no argument that the trial court erred in its immunity determination. Further, the Plaintiffs cite no authority and present no cogent argument in support their claim that Avrohem's religious rights were violated by the City's action of disconnecting power while Avrohem was on a religious holiday. See Jeffrey, 956 N.E.2d at 159 (citing App. R. 46(A)(8)(a)). Accordingly, the Plaintiffs have not persuaded us that the trial court erred in granting summary judgment in favor of the City with regard to Avrohem's individual claims regarding the alleged violation of his constitutional rights.

**Conclusion**

For all of the reasons stated above, the Plaintiffs have not met their burden as appellees of persuading us that the trial court erred in granting summary judgment in favor of the City.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.

11