**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Nov 13 2014, 10:06 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LAURA J. GIORDANO**
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE PATERNITY OF    )
S.P., Minor Child,    )
    )
K.M, Father,    )
    )
    Appellant-Respondent,    )
    )
        vs.    )    No. 45A04-1312-JP-587
    )
A.P., Mother, and STATE OF INDIANA,    )
    )
    Appellees-Plaintiffs.    )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas W. Webber, Sr., Judge *Pro Tem*
The Honorable Elizabeth Tegarden, Magistrate
Cause No. 45D06-0701-JP-39

**NOVEMBER 13, 2014**

**MEMORANDUM OPINION - NOT FOR PUBLICATION**

**MAY, Judge**

K.M. (Father) appeals the denial of his motion to set aside a default judgment against him, asserting the judgment is void due to inadequate service of process. We affirm.

## FACTS AND PROCEDURAL HISTORY

A.P. (Mother) gave birth to S.P. (Daughter) on December 20, 2006. After being contacted by Mother's counsel, Father submitted to collection of his DNA near his home in California on January 5, 2007. Mother then petitioned to establish paternity on January 8, 2007. Mother's counsel, William Von Willer,[1] asserted that Father requested process be served at the home of Father's mother in Hammond, Indiana. Summons was sent via certified mail to the home of Father's mother, where it was signed for by his sister.

The court held an initial paternity hearing on March 26, 2007. Father was not present. Von Willer again asserted that he had been in telephone contact with Father and Father asked that service of process be sent to his mother's address in Hammond. Based on Von Willer's representations, the court found Father was served with process, Father had notice of the proceedings, and the hearing could proceed in his absence. After admitting the test results that established Father's paternity, the court declared Father the legal father of Daughter and ordered Daughter would remain in the custody of Mother. A hearing regarding child support was set for June 13, 2007.

Von Willer had additional telephone contact with Father, and in late May, Father faxed financial information to Von Willer with a note indicating Father could not afford to

---

[1] The trial court's order reflects that Von Willer died prior to these proceedings to set aside the judgment against Father.

2

pay the amount of child support Von Willer had proposed. Father did not attend the hearing on June 13, 2007. At the hearing, Von Willer reported he had additional contact with Father.[2] Using the financial information Father had sent to Von Willer, the court set Father's child support at $215.84 a week. The court also found Father had an arrearage of $5,396.00, and the court ordered Father to repay that arrearage by paying an additional $35.00 per week until the debt was eliminated. The court entered an income withholding order, but no support was collected therefrom.

In March 2010, Mother filed a motion for contempt. Mother first tried to serve notice to Father at his last known address in California, but when that was unsuccessful, the court authorized service by publication. Father did not appear for the July 2010 hearing on Mother's motion. The court found Father in contempt for failure to pay child support, imposed a ninety-day sentence, and issued a bench warrant.

In June 2012, Father was notified that his passport was to be suspended due to nonpayment of child support. In November, when Father learned his passport had been suspended due to unpaid child support, he paid $1,500.00 to have it reinstated.

Then, in January 2013, Father received a letter from the Indiana Child Support Division informing him that his Indiana investment advisor and broker license would be suspended if he did not contact the prosecutor's office about delinquent child support. Father engaged in limited negotiations with the prosecutor's office but did not make any

---

[2] The trial court's "ORDER ON HEARING OF JUNE 13, 2007," (App. at 24), indicates Von Willer asserted he had provided Father with notice of the June hearing; however, the record before us does not contain a transcript of that hearing.

arrangements to pay support consistently. Father filed a request for a hearing in the administrative action, claiming he had not been properly served with notice of the paternity action or any hearings, so all the proceedings should be set aside and a hearing held to determine paternity and calculate child support. Because Father did not begin to make consistent payments, the State suspended his professional license.

Father also filed a motion to set aside the default judgment in the paternity proceedings. Before the June 2013 hearing on his motion to set aside the default judgment, Father requested an emergency hearing in the paternity court to lift the suspension of his professional license. At that emergency hearing on May 30, 2013, the State established Father was $70,590.56 in arrears. The court declined to lift the suspension of Father's license.

A few weeks later, the court held the hearing on Father's motion to set aside the default judgment establishing paternity and child support. The court denied that motion after concluding:

> 43. The weight of the evidence establishes that Father directed Mother's counsel to serve Father at the paternal grandmother's home and, therefore, Father was properly served pursuant to the Indiana Trial Rules. But even if Father's service was defective, Father is estopped from collaterally attacking the paternity judgment because he ratified, acknowledged and submitted himself to the jurisdiction of this court when he paid child support in 2012 and when, in 2013, he filed an emergency petition requesting the court to reinstate his Indiana professional license.

(App. at 20.)

4

**DISCUSSION AND DECISION**

A default judgment may be set aside "for the grounds and in accordance with the provisions of Rule 60(B)." Ind. Trial Rule 55(C). Trial Rule 60(B) states, in relevant part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a judgment, including a judgment by default for the following reasons: . . . (6) the judgment is void; . . . ." Rule 60(B) is intended to provide "relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant." *Goldsmith v. Jones*, 761 N.E.2d 471, 474 (Ind. Ct. App. 2002), *reh'g denied*. It is the movant's burden to "demonstrate that the relief is both necessary and just." *DeLage Landen Fin. Servs., Inc. v. Cmty. Mental Health Ctr.*, 965 N.E.2d 693, 696 (Ind. Ct. App. 2012), *trans. denied*.

Because Trial Rule 60 provides an equitable remedy within the trial court's discretion, we generally review the court's ruling only for abuse of discretion. *In re Adoption of C.B.M.*, 992 N.E.2d 687, 691 (Ind. 2013) (internal citations omitted). But when the motion for relief alleges the judgment is void, then there was no room for the trial court to exercise discretion because a judgment is either valid or void. *D.L.D. v. L.D.*, 911 N.E.2d 675, 678 (Ind. Ct. App. 2009), *reh'g denied*, *trans. denied*.

Father alleged the judgment against him was void because inadequate service of process prevented the trial court from obtaining jurisdiction over him.

> When notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane* [*v. Cent. Hanover Bank & Trust Co.*], 339 U.S. [306] at 315, 70 S.Ct. 652 [1950].

> Notice should be such as is reasonably calculated to inform defendant of the pending proceedings. In making this determination we must decide whether the best method possible has been utilized. A certain method is sufficient if no other method better calculated to give notice is available but is insufficient if another method obviously better calculated to give notice is available.

*Mueller v. Mueller*, 259 Ind. 366, 371, 287 N.E.2d 886, 889 (1972) (citation omitted).

*Adoption of L.D.*, 938 N.E.2d 666, 671 (Ind. 2010).

A judgment entered against a defendant without adequate service of process must be set aside as void. *Id.* at 669. Therefore we review *de novo* the trial court's conclusions of law regarding the existence of jurisdiction. *D.L.D.*, 911 N.E.2d at 679. However, to the extent the court's conclusion about the existence of jurisdiction rests on facts, we review the court's findings of those facts for clear error. *Id.* "Clear error exists where the record does not offer facts or inferences to support the trial court's findings." *Id.*

All parties agree service of process was delivered to his mother's home in Indiana. Father claims the notice given to him was inadequate because it was sent to his mother's house in Hammond, Indiana, when Mother and her counsel knew that Father lived in California.

The trial court explicitly found, after reviewing the hearing tape from March 2007, that counsel reported Father "requested that service of process be sent to the home of his [mother] in Hammond, Indiana." (App. at 16.) The court also found:

> 23. At hearing, Father testified that both Mother and her attorney knew that Father was a resident of California, that he had not lived [with his mother]

6

since he was seventeen (17) years old, and that the "green card" was, in fact, signed by his sister.

24. Father testified that no one in his family forwarded the pleadings, or spoke to him via telephone about the certified letter received.

25. Father also testified that prior to the 10/17/2013 hearing, he had had no contact with Mother since the DNA testing and made no subsequent inquiries about how the child was fairing or being supported.

27. [3] Father acknowledged conversations with Attorney Von Willer in 2007, acknowledged providing financial information, and acknowledged receiving the child support calculation. Father testified that these conversations were without any mention or discussion of the pending legal proceedings, or the scheduled hearings. Father testified that once he rejected the support figure, stating that he would obtain counsel, Father heard nothing further from Attorney Von Willer, Mother or the Court.

28. However, Father did not retain counsel until 2013 when the State of Indiana began proceedings to suspend his Indiana professional license.

\* \* \* \* \*

33. Concerning Father's credibility, in light of the case record, the Court, too, cannot find Father's testimony concerning his knowledge of the paternity proceedings credible.

34. The Court finds that the weight of the most objective evidence establishes that Father instructed Attorney Von Willer to serve him at his mother's address, and that Father was aware of the paternity proceedings and the relevant court dates. Father is an educated, financially savy [sic] individual, and it strains credibility to believe that Father submitted to, and paid for, genetic testing and provided financial information to an attorney representing the mother of his child without any knowledge of the pending paternity action. Moreover, Attorney Von Willer made known to the sitting Magistrate that Father was a California resident and that he and Father were in communication regarding support issues. He also included Father's service instructions as part of the original filing. What motivation would Attorney Von Willer have to serve Father at the home of the paternal grandparent, absent Father's instructions, when Attorney Von Willer asserted in open Court that he has knowledge of Father's residence and has communicated by telephone and letter with Father in California?

(App. at 18-19) (footnote added).

Father's arguments indicating he did not receive proper service and that he spoke with

---

[3] The Order has no finding number 26.

Von Willer only once are invitations for our court to reweigh the evidence, which we cannot do. *See Borth v. Borth*, 806 N.E.2d 866, 869 (Ind. Ct. App. 2004) ("the trial court is charged with determining the credibility of witnesses").[4] Despite the sparse record, we hold the trial court's findings were not clearly erroneous, as there was evidence to support them. Accordingly, we affirm.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.

---

[4] Father also appeals the trial court's finding that he is estopped from challenging the child support order because he submitted himself to the trial court's jurisdiction when he paid $1,500.00 towards his child support obligation in 2012. However, as we hold Father received sufficient service of process, we need not address the issue.